Argued and submitted July 15, 1983, affirmed in part; reversed in part and remanded with instructions February 22, reconsideration denied April 6, petition for review denied June 5, 1984 (297 Or 272)

ISOM et al,
*Appellants,*

*v.*

PORTLAND GENERAL ELECTRIC CO. et al,
*Respondents.*

(A8010-06029; CA A25255)

677 P2d 59

Gary Roberts, Portland, argued the cause and filed the briefs for appellants.

Barbee B. Lyon, Portland, argued the cause and filed the brief for respondent Portland General Electric.

No appearance for respondents Public Utility Commission amd John J. Lobdell.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiffs filed this class action in circuit court on behalf of residential consumers of electricity provided by Portland General Electric (PGE), who have had their electrical service terminated or threatened to be terminated under circumstances where lack of electricity would significantly endanger their physical health. They appeal from the trial court's order dismissing their complaint seeking to enforce their rights under the PUC statutes and regulations and the Oregon Unlawful Debt Collection Practices Act. PGE[1] filed a motion to dismiss. The trial court dismissed the complaint as to PGE, because there was no allegation of an illegal termination of electricity in the wintertime, which it held is required under the PUC statutes, ORS 757.750 *et seq*,[2] to state a cause of action. In dismissing the complaint, the trial court found

---

[1] This appeal was taken after the court issued judgment pursuant to ORCP 67B. Defendants PUC and Lobdell did not appear in this court.

[2] ORS 757.750 provides:

"The Legislative Assembly finds that the termination of residential electric and natural gas utility services in the winter can lead to the serious impairment of human health and possibly to loss of life; therefore, the Legislative Assembly has enacted ORS 757.750 to 757.760."

ORS 757.755 provides:

"(1) The Public Utility Commissioner of Oregon shall establish rules to prohibit the termination of residential electric or natural gas service in the winter when such termination would significantly endanger the physical health of the residential consumer.

"(2) The commissioner shall provide by rule a method for determining when the termination of residential electric or natural gas service would significantly endanger the physical health of the residential consumer."

ORS 757.760 provides:

"The commissioner shall establish rules to require each electric and natural gas utility to:

"(1) Give written or personal notice of a proposed termination of residential service in a manner reasonably calculated to reach the consumer within a reasonable period of time prior to the proposed date of termination.

"(2) Accept reasonable partial payment on the outstanding account and to establish a reasonable payment schedule to make the account current in lieu of termination of service, and to inform the consumer of this provision; and

"(3) Inform those residential consumers who cannot afford to pay their bills of the names and telephone numbers of an appropriate unit within the Department of Human Resources and other appropriate social service agencies that can help the consumer investigate what federal, state or private aid might be available to that consumer."

that the Public Utility Commissioner does not have authority to make a rule prohibiting the termination of residential electrical and natural gas service year around. ORS 757.750 *et seq.* Plaintiffs refused to plead further and brought this appeal.

■　　.Plaintiffs contend that the trial court erred in dismissing their complaint, because PGE's statutory obligation under ORS 757.760 to notify consumers of their right to enter into time payment plans is not expressly limited to the wintertime. They also contend that their complaint should not have been dismissed, because it did state a claim under a PUC rule[3] prohibiting termination of electrical service

---

[3] Former OAR 860-21-075 provided, in pertinent part:

"(1) *Notice of Proposed Termination* - The utility shall give at least 15 days written notice to the customer, before termination of service. The notice shall contain:

"* * * * *

"(d) a statement that no termination shall take place without express approval of the Commissioner if a licensed physician, registered nurse, licensed nurse practioner, physician's assistant, or a public or private agency providing physical or mental health care notifies the utility orally or in writing prior to the proposed termination date, that termination of service will significantly endanger the physical health of a residential consumer or any member of the consumer's household. The customer must also be advised that to remain effective an oral notice shall be confirmed by certification in writing within 14 days, and such certification must be renewed every 30 days thereafter, unless the certification states that the condition is chronic, in which case the certification need not be renewed to continue in effect.

"(e) *Termination for non-payment - additional notice requirements-installment payments.* If the proposed termination of service is for non-payment for services rendered, or non-payment of a required deposit, the Notice of Proposed Termination may not be sent prior to the due date of the payment for the service billed. Such notice must advise the customer that no termination will take place if, prior to the proposed termination date, the customer pays the greater of $10.00 or 10% of the overdue account *and* enters into an installment payment plan with the utility designed to bring the account into balance no later than 10 months from the date of the agreement."

Former OAR 860-21-095 provided, in pertinent part:

"*Restrictions on residential service terminations*

"(1) *Physical Disabilities* - No utility shall terminate a residential customer's service or refuse to restore service upon request, without the Commissioner's approval, if the utility has been advised by a licensed physician, registered nurse, licensed nurse practitioner, physician's assistant or a public or private agency providing physical or mental health care that termination of service would significantly endanger the physical health of the customer, or any member of the customer's household, and a certification under 21-075(1)(d) is in effect."

throughout the year when it would significantly endanger the physical health of the customer.[4] These two contentions will be discussed together. The contention that their claim under the Unlawful Debt Collection Practices Act, ORS 646.639 *et seq,* should not have been dismissed will be discussed separately.

■ The general grant of authority to the Public Utilities Commissioner under ORS 756.040(1) and (2)[5] is broad. *See First Nat. Bank v. Pacific Tel. & Tel. Co.,* 81 Or 307, 159 P 561 (1916). The statute states that the Commissioner is vested with power to regulate every public utility and "to do all things necessary and convenient in the exercise of such power and jurisdiction." Although the rule goes further than ORS 757.760 *et seq,* it does not conflict with the statute. *See City of Portland v. Sunseri,* 66 Or App 261, 673 P2d 1369 (1983). ORS 757.750 and 757.755 impose on the Commissioner a duty to establish rules governing termination of service in the winter. They do not limit the Commissioner's broad authority under ORS 756.040(1) and (2), except that he may not refuse to follow the legislative mandate. In other words, we conclude that the Commissioner had authority under ORS 756.040(1) and (2) to make the rule under consideration. The legislative directive merely imposed an obligation to make a rule governing termination of service, applicable at least in winter. The Commissioner's rule covers winter *and* the rest of the year. It does not contravene the statute merely because it is broader than the statute. *See Nichols v. Board of Pharmacy,* 61 Or App

---

[4] As part of plaintiffs' contention under the rule, they claim that PGE is barred by the statute of limitations in ORS 756.580(4) from challenging the validity of the rule. We do not need to reach the statute of limitations problem, because it was not raised below and is deemed waived. *State v. Hickmann,* 273 Or 358, 360 540 P2d 1406 (1975).

[5] ORS 756.040(1) and (2) provide:

"(1) In addition to the powers and duties now or hereafter transferred to or vested in the commissioner, he shall represent the customers of any public utility, railroad, air carrier or motor carrier, and the public generally in all controversies respecting rates, valuations, service and all matters of which he has jurisdiction. In respect thereof he shall make use of the jurisdiction and powers of his office to protect such customers, and the public generally, from unjust and unreasonable exactions and practices *and to obtain for them adequate service at fair and reasonable rates.*

"(2) The commissioner is vested with power and jurisdiction to supervise and regulate every public utility, railroad, air carrier and motor carrier in this state, and *to do all things necessary and convenient in the exercise of such power and jurisdiction.*" (Emphasis supplied.)

274, 657 P2d 216, *rev den* 294 Or 749 (1983) (Oregon statute restricting dispensing controlled substances, although more restrictive than federal law, upheld as consistent with purposes of federal law). The rule is not invalid. The trial court erred in holding that plaintiffs did not state a claim for that reason.

Because the trial court dismissed the complaint for failure to state a claim for relief, it did not reach the issue of exhaustion of remedies. We turn to that issue next.

Plaintiffs argue that they have no adequate administrative remedy, because the Commissioner has adopted internal procedures effectively denying the right to a formal hearing and has refused to issue an order after a public hearing and because additional attempts at solving their problems administratively would be futile.

■ Ordinarily, those who seek judicial relief must show that they have exhausted administrative remedies. *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 581 P2d 50 (1978); *Oregon City v. Hartke,* 240 Or 35, 400 P2d 255 (1965); *Bay River v. Envir. Quality Comm.,* 26 Or App 717, 554 P2d 620, *rev den* (1976). In determining whether there are, in fact, administrative remedies at all, three tests have been used by this court. (1) Were the nonjudicial remedies to be pursued by plaintiffs truly "administrative" or were they legislative in nature? (2) If "administrative," were these potential remedies truly available to plaintiffs at the time they filed suit? (3) If available, were they adequate to address plaintiffs' problems? *See Fifth Avenue Corp. v. Washington Co., supra,* 282 Or at 615; *Albright v. Employment Appeals Board,* 32 Or App 379, 574 P2d 344 (1978).

Although plaintiffs argue otherwise, it is apparent that the answers to all three questions above are "yes." Plaintiffs concede that the remedies were "administrative in nature" but contend that they were not truly available to them when they filed suit. A close examination of what was pleaded concerning exhaustion of remedies shows that plaintiffs are divided into three groups of persons claiming to be aggrieved: (1) Austin and the Nicols, who appealed to the Commissioner by telephone hearing and got relief; (2) the Bethunes, who appealed to the Commissioner but got no relief; however, they

concede that they failed to use ORS 183.490[6] to force action by the Commissioner after he had failed to act; and (3) the Isoms, Burkhardt, the Brewers and the Fergusons, who made no attempt to seek their administative remedies.

Under former OAR 860-21-090,[7] any customer may appeal a utility's decision to terminate service or its refusal to restore service by notifying the Commissioner by telephone, in writing or in person. The Commissioner then resolves the problem informally, if possible. Otherwise, it will be set for hearing at the request of the customer or the Commissioner. If the Commissioner fails or refuses to act, the customer may petition the court to compel him to act pursuant to ORS 183.490; or, if the Commissioner acts and the customer disagrees with the action or results, the customer may file suit against the Commissioner pursuant to ORS 756.580 or 183.484.[8]

---

[6] ORS 183.490 provides:

"The court may, upon petition as described in ORS 183.484, compel an agency to act where it has unlawfully refused to act or make a decision or unreasonably delayed taking action or making a decision."

[7] Former OAR 860-21-090 provided, in pertinent part:

"(1) Any customer may appeal a utility's decision to terminate service or its refusal to restore service by notifying the Consumer Assistance Section of the Public Utility Commissioner, Room 300, Labor & Industries Building, Salem, Oregon 97310; telephone 1-800-452-7813, Ext. 6600. Notification may be made in person, by writing or by telephone.

"(2) Upon receipt of an appeal, the Commissioner shall immediately advise the utility. If service has not been terminated at the time the Commissioner notifies the utility of the appeal, the utility shall not terminate service without approval from the Commissioner. If service has been terminated prior to such notification, the Commissioner may order the utility to restore service upon such terms as he deems just and equitable pending resolution of the appeal.

"(3) If the matter cannot be resolved informally, it will be set for hearing immediately at the request of the customer or the Consumer Assistance Section of the Commissioner.

"* * * * *

"(6) If an appeal cannot be resolved informally, the Consumer Assistance Division shall advise the complainant of the right to file a written complaint with the Commissioner. The complaint shall state the facts of the dispute and the relief requested. The utility shall answer the complaint within 10 days of service of the complaint. The matter shall then be set for expedited hearing. A hearing may be held on less than statutory notice where good cause is shown.

"* * * * *"

[8] ORS 183.484 provides, in pertinent part:

 Those plaintiffs who sought and obtained administrative relief by calling the Commissioner in an informal hearing cannot now argue that there are no administrative remedies or that they are futile. Those plaintiffs who did not seek administrative remedies have joined in the proceeding with those who did and who received relief; they cannot now complain of lack of administrative remedies. If the administrative remedies provided relief for some plaintiffs, it is difficult to argue seriously that the others did not need to exhaust the remedies that were available and adequate for others in the same class. The Bethunes, who appealed to the Commissioner through the informal process and got no relief, because the Commissioner failed to act and did not hold a formal hearing, did not follow through under former OAR 860-21-090 or ORS 183.490. They cannot use only part of the administrative remedies and then argue that they are inadequate or futile; they must use *all* the administrative remedies available to them. Not having done so, they may not complain that the remedies were inadequate.

 Finally, plaintiffs argue that their causes of action under the Unlawful Debt Collection Practices Act, ORS 646.639 *et seq*, should not have been dismissed for failure to exhaust administrative remedies, because the Commissioner has no power to enforce the act. We agree. The legislature, through the Unlawful Debt Collection Practices Act, has provided a private right of action for certain debt collection practices not subject to the commissioner's authority. Plaintiffs are entitled to pursue this cause of action. *See* ORS 756.200(1).[9]

---

"(1) Jurisdiction for judicial review of orders other than contested cases is conferred upon the Circuit Court for Marion County and upon the circuit court for the county in which the petitioner resides or has a principal business office. Proceedings for review under this section shall be instituted by filing a petition in the Circuit Court for Marion County or the circuit court for the county in which the petitioner resides or has a principal business office.

"(* * * * *)"

ORS 756.580 provides, in pertinent part:

"(1) A party to any proceeding before the commissioner, when aggrieved by any findings of fact, conclusions of law or order, including the dismissal of any complaint or application by the commissioner, may prosecute a suit against the commissioner to modify, vacate or set aside such findings of fact, conclusions of law or order.

"(* * * * *)"

[9] ORS 756.200(1) provides:

Plaintiffs claim that PGE violated ORS 646.639(2)(k)[10] by terminating or threatening to terminate their service when they had reason to believe that that right did not exist. Specifically, plaintiffs contend that PGE insisted on full payment instead of explaining the option of partial payment, ignored the existence of the medical certification procedure, despite being informed of facts which indicate that plaintiffs would qualify, terminated or threatened to terminate service after a valid medical certification has been provided, asserted a right to plaintiffs' full cash payment which, under the Low Income Energy Assistance Act, they knew did not exist and terminated service despite full payment.[11]

The facts of the Isoms' claim are characteristic. Their pleadings assert:

"XIV.

"The facts in the cases of plaintiffs are typical of those of the class. Plaintiffs Robert and Marjorie Isom were unable to pay their electric bill. Plaintiffs Robert and Marjorie Isom were in personal contact with PGE agents on several occasions during February, March, and April, 1980. At no time did any PGE agents advise plaintiffs orally about the availability of the 10% plan as an alternative to termination of service.

---

"The remedies and enforcement procedures provided in ORS chapters 756, 757, 758, 760, 761, 763, 764, 767 and 773 do not release or waive any right of action by the state or by any person for any right, penalty or forfeiture which may arise under any law of this state or under an ordinance of any municipality thereof."

[10] ORS 646.639(2)(k) provides:

"It shall be an unlawful collection practice for a debt collector, while collecting or attempting to collect a debt to do any of the following:

"* * * * *

"(k) Attempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten to take any action which the debt collector in the regular course of business does not take."

[11] Their pleading states:

"Defendant PGE's conduct, as above alleged, is engaged in wilfully to enforce a right or remedy with knowledge or reason to believe that the right or remedy does not exist in that PGE employs the threat of termination of utility service to coerce payment as a right and remedy unqualified by the 10% plan and medical certification limitations, and in circumstances in which such limitations render the right, remedy, and threat of termination lawfully unavailable."

"XV.

"During conversations with PGE agents, the Isoms advised defendant that one of their children had been badly burned in a house fire, receiving second and third degree burns over 45% of her body and requiring substantial facial reconstruction surgery. Despite this knowledge, defendant PGE never advised plaintiffs of their right to obtain a medical certification.

"XVI.

"On or about April 2, 1980, the Isoms' electric service was terminated. Despite payment of $318.00 (out of $497.87 owing) on April 9, 1980, defendant PGE refused to restore service until the full amount was paid, despite defendant PGE's knowledge that it had not complied with the applicable statute and rule prior to termination. Electrical service was restored to plaintiffs on April 16, 1980, only after the intervention of a social service agency."

■ We conclude that, if evidence is presented supporting these allegations in the complaint, a jury could find PGE attempted to or threatened to enforce the right to terminate service when it had reason to believe that the right to terminate was not available because plaintiffs qualified for legislatively mandated relief.

Affirmed in part; reversed and remanded for further proceedings on plaintiffs' claim under the Unlawful Debt Collection Practices Act.