ROWE et ux,
*Appellants,*

*v.*

BANK OF THE CASCADES,
*Respondent.*

(31574; CA A26980)

683 P2d 93

Greg O'Neil, Bend, argued the cause for appellant. On the briefs was Mark S. Snyder, Bend.

Martin E. Hansen, Bend, argued the cause for respondent. With him on the brief was Johnson, Marceau, Karnopp & Petersen, Bend.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiffs appeal a summary judgment for defendant in their statutory action for unlawful debt collection. ORS 646.639. The trial court concluded that, even accepting plaintiffs' version of the transaction, the debt did not arise out of a consumer transaction. Although we agree with the trial court as to a part of plaintiffs' claim, we conclude that there is a genuine issue of fact as to the other part and reverse.

In October, 1980, plaintiffs borrowed $75,000 from Far West Federal Savings & Loan Association (Far West) to build their home, giving Far West a first trust deed on the home. In March, 1981, plaintiffs borrowed $10,494 from defendant, Bank of the Cascades (Cascades), secured by a second mortgage on the same home. In December, 1981, plaintiffs sold their business known as Maranatha Meats and deposited the $18,000 proceeds of the sale in a checking account with Cascades. At that time, plaintiffs were not in default on the Cascades loan but were approximately $5,400 behind on payments to Far West, which commenced foreclosure proceedings. Cascades was aware of plaintiffs' default on the Far West loan. After the Far West foreclosure was commenced, plaintiffs cured that default from funds in their checking account with Cascades, reinstating that loan. Subsequently, Cascades "froze" plaintiffs' checking account and returned several checks unpaid, in spite of the fact that funds in the account were more than sufficient to honor the checks.

Plaintiffs commenced this action against Cascades, the substance of which is contained in paragraph IV of the complaint:

"The Defendant, apparently insecure about the debt incurred by the Plaintiffs on or about March 20, 1981, as evidenced by a note attached hereto as Exhibit 1, or a debt incurred by the Plaintiffs on or about October 17, 1980, as a result of a loan from Far West Federal Savings and Loan Association, as evidenced by a note attached hereto as Exhibit 2, *in an attempt to collect one or both of said debts* immediately attached the funds in the account referred to in Paragraph III without cause, not pursuant to Court order, without notifying the Plaintiffs, and with knowledge or reason to know that such a right or remedy did not exist, in violation of

ORS 646.639, and dishonored several checks presented subsequent to the deposit causing Plaintiffs general damage in a sum and amount of $200." (Emphasis supplied.)

Defendant moved for summary judgment on the ground that, even if the account had been seized improperly, it was done to protect a commercial loan and, therefore, the Unlawful Debt Collection Practices Act (UDCPA) does not apply.[1]

Although there were affidavits, counter-affidavits and plaintiff Richard Rowe's deposition submitted in support of, and in opposition to, the motion, there is little difference between the parties as to the purpose of the Cascades loan. Defendant's version is that the purpose was to increase plaintiffs' business inventory, to pay for cooler cases for their store and for other business-related purposes. In his deposition, plaintiff Richard Rowe testified that plaintiffs used the loan proceeds to pay for meat that had been traded to contractors in exchange for goods and services that they had provided in the construction of their home. He also stated that they paid for three cooler cases for their business and that he was "going to run up their meat bill."

The trial court accepted plaintiffs' version of the use to which they put the Cascades loan proceeds but concluded that the loan was not a consumer transaction within the meaning of the Act. ORS 646.639(1) provides, in pertinent part:

"(1)   As used in subsection (2) of this section:

"(a)   'Consumer' means a natural person who purchases or acquires property, services or credit for personal, family or household purposes.

"(b)   'Consumer transaction' means a transaction between a consumer and a person who sells, leases or provides property, services or credit to consumers.

"* * * * *

"(e)   'Debt' means any obligation or alleged obligation arising out of a consumer transaction."

The question is whether, on these facts, plaintiffs obtained the Cascades loan for personal, family or household purposes. We agree with the trial court that they did not. The

---

[1] Plaintiffs allege only violations of the UDCPA.

loan proceeds were used to pay off debts for meat purchased for plaintiffs' commercial meat business and for cooler cases for that business. What plaintiffs had done, or would do, with the meat is irrelevant to determining the purpose of the loan. The Cascades loan was not a consumer transaction.

■       However, the trial court did not dispose of plaintiffs' other contention alleged in the complaint, asserted in their affidavit and about which plaintiff Richard Rowe testified in his deposition: that Cascades froze their checking account for the purpose of attempting to collect plaintiffs' debt to Far West, which concededly was a consumer transaction. Richard Rowe testified in his deposition that he intended to cure the Far West default out of the proceeds from the sale of their business. After the sale, the proceeds were deposited in a checking account with Cascades, which was aware of the default on the Far West loan. Rowe testified that he had talked to Mark Stanard, the manager of Cascades' branch where plaintiffs opened the account, and that Stanard had told him that the account was frozen because plaintiffs had not taken care of the first trust deed. Assuming, as we must on defendant's motion for summary judgment, that those facts are true, the question is whether Cascades' conduct amounts to an unlawful debt collection practice within the meaning of the UDCPA.

Section 646.639(2)(k) of the Act provides:

"(2)   It shall be an unlawful collection practice for a debt collector, while collecting or attempting to collect a debt to do any of the following:

"* * * * *

"(k)   Attempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten to take any action which the debt collector in the regular course of business does not take."

"Debt collector" is defined as:

"(g)   * * * *[A]ny person who* by any direct or indirect action, conduct or practice, enforces or *attempts to enforce an obligation that is owed or due to any commercial creditor,* or alleged to be owed or due to any commercial creditor, *by a consumer as a result of a consumer transaction.* Notwithstanding any other provision in ORS 646.541 and this section, 'debt collector' shall not be construed to include any person

who is attempting to collect from the maker of any check, draft or order for the payment of money which has been dishonored." ORS 646.639(1)(g). (Emphasis supplied.)

"Commercial creditor" is defined as:

"* * * [A] person who in an ordinary course of business engages in consumer transactions." ORS 646.639(1)(c).

Because Far West is a commercial creditor, as defined, if Cascades froze plaintiffs' account in order to force plaintiffs to pay their consumer debt to Far West, as plaintiffs claim, that conduct would come within the provisions of the Act. Accordingly, it was error to grant Cascades' motion for summary judgment.

Reversed and remanded.