Argued and submitted March 2, the decision of the Court of Appeals reversed and the judgment of the circuit court affirmed August 6, 1992

Charles O. PORTER,
*Petitioner on Review,*

*v.*

Reginald Robert HILL,
*Respondent on Review.*

(CC 16-88-08912; CA A61074; SC S38572)

838 P2d 45

▮

▮

John F. Kilcullen, of Brown, Roseta, Long & McConville, Eugene, argued the cause for petitioner on review. With him on the petition was Richard A. Roseta.

Jeff Price, Portland, argued the cause and filed the response to the petition for respondent on review.

GRABER, J.

## GRABER, J.

This civil case involves the Unlawful Debt Collection Practices Act (UDCPA), ORS 646.639, and the federal Truth In Lending Act (TILA), 15 USC § 1601 *et seq.* Plaintiff, a lawyer, brought this action against his former client to collect fees for services rendered. Defendant counterclaimed, contending (among other things) that plaintiff had violated UDCPA and TILA. The trial court dismissed those counterclaims for failure to state a claim. ORCP 21A(8). On appeal, the Court of Appeals reversed. *Porter v. Hill*, 108 Or App 418, 815 P2d 1290 (1991). We reverse the decision of the Court of Appeals.

## I. FACTS[1] AND PROCEDURAL BACKGROUND

Defendant engaged plaintiff to perform legal services. Plaintiff and defendant entered into a written "Retainer and Fee Agreement," which provided in part:

> "Client will be responsible for filing fees, court costs, costs of special reports, investigation and/or depositions, and witness fees. Such costs are payable in advance, or upon billing by Attorney."

Plaintiff incurred costs of the kind described in the fee agreement. Plaintiff sent billing statements to defendant periodically, listing those costs (among other things). At the bottom of each billing statement, the following appeared:

> "A LATE PAYMENT CHARGE OF 1 1/2% PER MONTH, BUT NOT LESS THAN $1.00, WILL BE ADDED TO THE BALANCE DUE ON REGULAR AND DEFERRED AMOUNTS MORE THAN 30 DAYS OVERDUE."

Plaintiff filed this action, claiming in the original complaint that defendant owed $26,623.25 for legal services, plus late payment charges. The $26,623.25 included hourly fees for representing defendant in a state criminal case and a federal civil rights action. Defendant answered and counterclaimed. Among other things, defendant asserted that plaintiff had agreed to represent him for free in the criminal case and on a contingent fee basis in the civil rights action.

---

[1] Because we are reviewing the dismissal of claims for failure to state a claim, we assume the truth of all well-pleaded allegations. *Madani v. Kendall Ford, Inc.*, 312 Or 198, 201, 818 P2d 930 (1991).

Separate counterclaims alleged that plaintiff had violated UDCPA and TILA, had engaged in unlawful trade practices, and had committed the tort of intentional infliction of severe emotional distress. After checking his records, plaintiff acknowledged that he had accepted the civil rights case on a contingent fee basis. Plaintiff amended the complaint to allege that defendant owed him $3,112.75 for legal services in the criminal case and for deposition costs. Defendant filed an amended answer, which contained the same counterclaims.

On plaintiff's motion, the trial court dismissed the UDCPA and TILA counterclaims with prejudice, and the case proceeded to trial. The jury found in favor of plaintiff on his claim and against defendant on his counterclaim for unlawful trade practices.[2] The trial court then entered judgment in favor of plaintiff. Defendant appealed, arguing that the trial court erred in dismissing his UDCPA and TILA counterclaims. As noted above, the Court of Appeals agreed with defendant.

## II. UNIFORM DEBT COLLECTION PRACTICES ACT

With respect to UDCPA, defendant alleges in his counterclaim:

"Plaintiff knows or should have known that the debt does not exist and that he has no actionable right with respect to the alleged debt."

Defendant argues that he states a claim under ORS 646.639, which provides in part:[3]

"(1) As used in subsection (2) of this section:

"(a) 'Consumer' means a natural person who purchases or acquires property, services or credit for personal, family or household purposes.

"(b) 'Consumer transaction' means a transaction between a consumer and a person who sells, leases or provides property, services or credit to consumers.

"(c) 'Commercial creditor' means a person who in the ordinary course of business engages in consumer transactions.

---

[2] Defendant's counterclaim for intentional infliction of severe emotional distress was dismissed by the court before trial, and that ruling was not challenged on appeal.

[3] The full text of ORS 646.639 is set out in the appendix to this opinion.

"* * * * *

"(g) 'Debt collector' means any person who by any direct or indirect action, conduct or practice, enforces or attempts to enforce an obligation that is owed or due to any commercial creditor, or alleged to be owed or due to any commercial creditor, by a consumer as a result of a consumer transaction.

"* * * * *

"(2)   It shall be an unlawful collection practice for a debt collector, while collecting or attempting to collect a debt to do any of the following:

"* * * * *

"(k)   Attempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten to take any action which the debt collector in the regular course of business does not take."

Defendant is a "consumer," because he is a natural person who acquired services for personal, family, or household purposes. Plaintiff is a "commercial creditor," because he engages in transactions with "consumers," in which he provides services to them, in the ordinary course of business. In the present action, plaintiff is acting as a "debt collector," because he is attempting to enforce an obligation that is alleged to be owed to him as a "commercial creditor" by the "consumer" as the result of a "consumer transaction." The disputed question under UDCPA is whether ORS 646.639(2)(k) proscribed plaintiff's attempt to collect an allegedly nonexistent debt by filing a civil action.

Defendant argues that a debt that does not exist is a "right * * * [that] does not exist," within the meaning of ORS 646.639(2)(k). With respect to the word "remedy," defendant reasons that plaintiff, by filing the action, attempted to enforce a remedy (collecting a debt in a legal action) with knowledge or reason to know that that remedy does not exist in the absence of a debt.

Plaintiff counters that a debt is not a "right" within the meaning of ORS 646.639(2)(k). Plaintiff asserts that that paragraph does not address the existence or amount of a debt, but rather addresses only the method by which a debt is collected. Plaintiff further argues that filing a civil action is

not the kind of "remedy" that ORS 646.639(2)(k) is meant to foreclose. We agree with plaintiff.

■ ■     In interpreting ORS 646.639(2)(k), our task is to discern the intent of the legislature. ORS 174.020. We look first to the text and context of the statute to discern legislative intent. ORS 174.020; *State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 174-75, 818 P2d 1270 (1991). The context includes other statutes relating to the same subject matter. *See Davis v. Wasco IED*, 286 Or 261, 272, 593 P2d 1152 (1979) (in determining the legislature's intent in enacting a statute, courts should read that statute in connection with others relating to the same subject matter); *Kankkonen v. Hendrickson*, 232 Or 49, 67, 374 P2d 393 (1962) (same). In this case, as will be demonstrated below, the text and context of ORS 646.639 (2)(k) inform us as to the legislative intent and resolve any ambiguity.

■     Defendant reasons: A debt is a right to be repaid; ORS 646.639(2)(k) forbids a creditor from enforcing a right that does not exist; therefore, that paragraph must cover attempted enforcement of a nonexistent debt. The major flaw in that reasoning is that the legislature has defined the word "debt" differently than defendant has. ORS 646.639(1)(e) defines "debt" to "mean[] any obligation *or alleged obligation* arising out of a consumer transaction." (Emphasis added.)

That definition is important in three respects. First, it does not use the word "right." Second, it expressly recognizes that a debt might or might not be owed. Third, ORS 646.639(2)(k) does not employ the defined word "debt" at all in explaining what practices it forbids.

ORS 646.639(2) provides that "[i]t shall be an unlawful collection practice for a debt collector, *while collecting or attempting to collect a debt*," to do any of the practices listed in paragraphs (a) through (o). The specific practice described in paragraph (k) is "[a]ttempt[ing] to or threatening[ing] to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten[ing] to take any action which the debt collector in the regular course of business does not take." ORS 646.639(2)(k) makes

sense grammatically only if an underlying debt, expressly defined to include an alleged debt, is assumed to exist.

The substance of the statute as a whole points in the same direction as does its grammar. The statute proceeds from the assumption that a debt does (or might) exist and prohibits the debt collector from using unfair practices to collect it. Nothing in the statute evidences a legislative concern with the existence or amount of the underlying debt, as distinct from the use of abusive methods to pressure debtors to pay their debts. *All* paragraphs other than (k) of ORS 646.639(2) refer to specific *methods* of enforcing a debt; all portray coercive or abusive tactics. Examples include threatening or using physical force, ORS 646.639(2)(a), using profane or abusive language in communicating with the debtor, ORS 646.639(2)(d), and communicating with the debtor's employer about the debt, ORS 646.639(2)(f). ORS 646.639(2)(k) fits sensibly into that list only if it, too, is read to prohibit certain methods of collecting a debt, such as enforcing a right collateral to the debt in order to pressure the debtor to pay the debt.

The Court of Appeals has decided two cases that provide examples of when ORS 646.639(2)(k) applies. In *Isom v. P.G.E.*, 67 Or App 97, 106, 677 P2d 59 (1983), the court held that the debtors stated a claim under ORS 646.639(2)(k), because the debt collector, a utility, had terminated the debtors' electrical service when it had reason to believe that the right to terminate was not available. In *Rowe v. Bank of the Cascades*, 68 Or App 490, 494-95, 683 P2d 93 (1983), the court held that the debtors stated a claim under ORS 646.639(2)(k) where the debt collector, a bank, had frozen the debtors' checking account for the purpose of attempting to collect the debtors' debt to a different bank.

Had the legislature wanted ORS 646.639(2)(k) to include the practice of trying to collect a nonexistent debt, it would have referred to the debt. The legislature did include two paragraphs that concern the amount of the underlying debt. ORS 646.639(2)(m) and (n) provide:

"It shall be an unlawful debt collection practice for a debt collector * * * to * * *:

"* * * * *

"(m)   Represent that an existing debt may be increased by the addition of attorney fees, investigation fees or any other fees or charges when such fees or charges may not legally be added to the existing debt.

"(n)   Collect or attempt to collect any interest or any other charges or fees in excess of the actual debt unless they are expressly authorized by the agreement creating the debt or expressly allowed by law."

Those paragraphs refer to methods of collecting a debt: adding unauthorized charges to the underlying debt in order to pressure the debtor to pay the underlying debt. But they also concern the amount of the debt itself. Paragraphs (m) and (n) demonstrate that, when the legislature intended to refer to the amount of a debt, it did so plainly by using the word "debt." We conclude that the term "right" in ORS 646.639(2)(k) does not mean "debt."

■ ■   We next consider defendant's argument that an attempt to enforce a nonexistent debt by filing an action is an attempt knowingly to enforce a "remedy [that] does not exist," within the meaning of ORS 646.639(2)(k). It is apparent from examining other paragraphs of subsection (2) that filing civil actions is not ordinarily the sort of conduct that ORS 646.639(2)(k) proscribes.[4]

Most telling are the paragraphs that concern side-stepping the legal process or using the appearance of legal authority when no such legal authority exists. ORS 646.639(2) provides that it is an unlawful debt collection practice to:

"(b)   Threaten arrest or criminal prosecution.

"(c)   Threaten the seizure, attachment or sale of a debtor's property *when such action can only be taken pur-suant to court order without disclosing that prior court proceedings are required.*

"* * * * *

---

[4] This is *not* a case in which, for example, the parties' agreement required them to submit to arbitration instead of filing a civil action, when it might be argued that the debt collector is attempting "to enforce a * * * remedy [of filing a civil action] with knowledge or reason to know that the * * * remedy does not exist." ORS 646.639(2)(k). In that situation, the form of the remedy, rather than the substance of what is to be remedied (the merits of the claim for the underlying debt), arguably is known not to exist.

"(L)   Use any form of communication which *simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a governmental agency, governmental official or an attorney at law when it is not in fact so approved or authorized.*" (Emphasis added.)

Those paragraphs prohibit pressuring a debtor into paying on *threat* of legal action, or misleading the debtor into believing that legal authority exists. In contrast, no paragraph suggests that *actually* filing a legal action is prohibited. That is because filing a legal action resolves issues surrounding the debt in a proper manner, not duplicitously or coercively.

Defendant's reading of the statute also would make it redundant of portions of the Unlawful Trade Practices Act, ORS 646.605 *et seq.* ORS 646.608 provides in part:

"(1)   A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person does any of the following:

"* * * * *

"(k)   Makes false or misleading representations concerning * * * the nature of the transaction or obligation incurred.

"* * * * *

"(s)   Makes false or misleading representations of fact concerning the offering price of * * * services.

"* * * * *

"(2)   A representation under subsection (1) of this section * * * may be any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact."

Those provisions cover the situation in which a lawyer files an action to collect fees when the lawyer knows or has reason to know that no fees in fact are owed.[5] Reading ORS 646.639 and ORS 646.608 together demonstrates that the legislative objective of ORS 646.639(2)(k) is narrower than the one for which defendant argues here.

---

[5] Those provisions formed the basis for defendant's counterclaim in this case for unlawful trade practices, as to which the jury found against him.

We hold that filing a civil action to collect an alleged debt is not an act attempting to enforce a "right" or "remedy" proscribed by ORS 646.639(2)(k) merely because all or part of the alleged debt does not exist. The trial court did not err when it dismissed defendant's UDCPA counterclaim.

## III.  TRUTH IN LENDING ACT

Defendant's second counterclaim is under TILA. He alleges:

"45.

"Plaintiff's original Complaint and the proposed First Amended Complaint alleged that he has extended credit to Defendant with a finance charge. The alleged credit is for attorney services primarily provided for Defendant's personal, family or household use.

"46.

"Plaintiff extended such open-ended credit 25 times or more in the year preceding his transaction with Defendant on billings providing for 'a late payment [*sic*] of 1 1/2% per month, but not less than $1.00, will be added to the balance due on regular and deferred amounts more than 30 days overdue.' "

Defendant also alleges that TILA governs plaintiff and that plaintiff did not make certain required disclosures.

The purpose of TILA, 15 USC § 1601 *et seq*, is to ensure that creditors make meaningful disclosure of credit terms to debtors. 15 USC § 1601. Congress gave the Federal Reserve Board (FRB) authority to construe TILA's provisions and to promulgate regulations to carry out the legislative purpose. 15 USC § 1632(a). FRB regulations are not binding on courts, but they are entitled to substantial deference, because the agency has broad interpretive powers. *See Bright v. Ball Memorial Hospital Ass'n, Inc.*, 616 F2d 328, 333 n 1 (7th Cir 1980) (so stating).

Under the FRB regulations, TILA is applicable to a person

"who regularly extends consumer credit that is *subject to a finance charge* or is payable by written agreement in more than 4 installments * * * and (B) to whom the obligation is initially payable * * *." 12 CFR 226.2(a)(17)(i)(A) (emphasis added; footnote omitted).

"(12) *Consumer* credit means credit offered or extended to a consumer primarily for personal, family, or household purposes.

"* * * * *

"(14) *Credit* means the right to defer payment of debt or to incur debt and defer its payment." *Id.* at 226.2(a) (emphasis in original).

Persons "regularly extend consumer credit" only when they have extended credit more than 25 times in either the preceding or the current calendar year. 12 CFR § 226.2(a)(17)(i) n 3.

12 CFR § 226.4 excludes "late payment charges" from the definition of finance charge:

"Finance Charge

"(a) Definition. The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit * * *.

"* * * * *

"(c) Charges excluded from the finance charge. The following charges are not finance charges:

"* * * * *

"(2) Charges for actual unanticipated late payment, * * * or for delinquency, default, or a similar occurrence."

Plaintiff contends that he is not governed by TILA, because he did not "regularly extend consumer credit subject to a finance charge," but instead provided for a late payment charge on his billings. The official FRB staff commentary to 12 CFR 226.4 (12 CFR 226.4, Supp I) sets forth standards to determine whether a charge is a late payment charge, rather than a finance charge:

"1. Late payment charges. * * * In determining whether a charge is for actual unanticipated late payment, * * * factors to be considered include:

"The terms of the account. For example, is the consumer required by the account terms to pay the account balance in full each month? If not, the charge may be a finance charge.

"The practices of the creditor in handling the accounts. For example, regardless of the terms of the account, does the

creditor allow consumers to pay the accounts over a period of time without demanding payment in full or taking other action to collect? If no effort is made to collect the full amount due, the charge may be a finance charge."

To summarize, the commentary lists two factors to determine whether a charge is a "late payment charge" to which the TILA disclosure requirements do *not* apply: whether the terms of the account require the consumer to pay the balance in full each month and whether, regardless of the terms, the creditor in fact acquiesces in the extension of credit by allowing the consumer to pay the account over time without demanding payment in full or taking other action to collect. Here, both factors show that the charge was a late payment charge.

■ Plaintiff's billing statements, which were incorporated by reference in the pleadings, and his original complaint refer to a "late payment charge," not to a finance charge. Although defendant's counterclaim alleges that plaintiff added a "finance charge" and although we assume the truth of all well-pleaded allegations, the characterization of the amount as a "finance charge" is a legal conclusion, not a fact.

■ The parties' written agreement required defendant to pay the balance in full "in advance, or upon billing by Attorney." Defendant does not allege that the parties amended that agreement. Defendant does not allege that plaintiff in fact ever gave him the option of paying over time subject to the 1-1/2 percent charge;[6] indeed, instead of doing that, plaintiff demanded full payment each month and, when he was dissatisfied, brought this action to collect the full amount due. The debtor's mere failure to pay the account in full when due does not convert the charge into a finance charge. *See Bright v. Ball Memorial Hospital Ass'n, Inc., supra,* 616 F2d at 334-37 (where agreement provided for late payment charge on unpaid balance, failure of customer to pay bill when due was "unanticipated," and late payment charge was not a finance charge); *Rogers Mortuary, Inc. v. White,* 92 NM 691, 594 P2d 351, 353 (1979) (debtor's failure to pay in full, and debtor's attempt to interpret a funeral purchase

---

[6] Defendant's counterclaim relies on what plaintiff's billings said, not on what plaintiff did with respect to defendant's failure to pay those bills when due.

agreement as allowing an extension of credit, did not make the late payment charge provided for in the agreement a finance charge).

The trial court did not err in dismissing defendant's TILA counterclaim.

## IV. DISPOSITION

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

# APPENDIX

ORS 646.639 provides:

"(1)    As used in subsection (2) of this section:

"(a)    'Consumer' means a natural person who purchases or acquires property, services or credit for personal, family or household purposes.

"(b)    'Consumer transaction' means a transaction between a consumer and a person who sells, leases or provides property, services or credit to consumers.

"(c)    'Commercial creditor' means a person who in the ordinary course of business engages in consumer transactions.

"(d)    'Credit' means the right granted by a creditor to a consumer to defer payment of a debt, to incur a debt and defer its payment, or to purchase or acquire property or services and defer payment therefor.

"(e)    'Debt' means any obligation or alleged obligation arising out of a consumer transaction.

"(f)    'Debtor' means a consumer who owes or allegedly owes an obligation arising out of a consumer transaction.

"(g)    'Debt collector' means any person who by any direct or indirect action, conduct or practice, enforces or attempts to enforce an obligation that is owed or due to any commercial creditor, or alleged to be owed or due to any commercial creditor, by a consumer as a result of a consumer transaction.

"(h)    'Person' means an individual, corporation, trust, partnership, incorporated or unincorporated association or any other legal entity.

"(2)    It shall be an unlawful collection practice for a debt collector, while collecting or attempting to collect a debt to do any of the following:

"(a)    Use or threaten the use of force or violence to cause physical harm to a debtor or to the debtor's family or property.

"(b)    Threaten arrest or criminal prosecution.

"(c)    Threaten the seizure, attachment or sale of a debtor's property when such action can only be taken pursuant to court order without disclosing that prior court proceedings are required.

"(d)    Use profane, obscene or abusive language in communicating with a debtor or the debtor's family.

"(e)    Communicate with the debtor or any member of the debtor's family repeatedly or continuously or at times known to be inconvenient to that person with intent to harass or annoy the debtor or any member of the debtor's family.

"(f)    Communicate or threaten to communicate with a debtor's employer concerning the nature or existence of the debt.

"(g)    Communicate without the debtor's permission or threaten to communicate with the debtor at the debtor's place of employment if the place is other than the debtor's residence, except that the debt collector may:

"(A)    Write to the debtor at the debtor's place of employment if no home address is reasonably available and if the envelope does not reveal that the communication is from a debt collector other than a provider of the goods, services or credit from which the debt arose.

"(B)    Telephone a debtor's place of employment without informing any other person of the nature of the call or identifying the caller as a debt collector but only if the debt collector in good faith has made an unsuccessful attempt to telephone the debtor at the debtor's residence during the day or during the evening between the hours of 6:00 p.m. and 9:00 p.m. The debt collector may not contact the debtor at the debtor's place of employment more frequently than once each business week and may not telephone the debtor at the debtor's place of employment if the debtor notifies the debt collector not to telephone at the debtor's place of employment or if the debt collector knows or has reason to know that the debtor's employer prohibits the debtor from receiving such communications. For the purposes of this subparagraph, any language in any instrument creating the debt which purports to authorize telephone calls at the debtor's place of employment shall not be considered as giving permission to the debt collector to call the debtor at the debtor's place of employment.

"(h)    Communicate with the debtor in writing without clearly identifying the name of the debt collector, the name of the person, if any, for whom the debt collector is attempting to collect the debt and the debt collector's business address, on all initial communications. In subsequent communications involving multiple accounts, the debt collector may

eliminate the name of the person, if any, for whom the debt collector is attempting to collect the debt, and the term 'various' may be substituted in its place.

"(i) Communicate with the debtor orally without disclosing to the debtor within 30 seconds the name of the individual making the contact and the true purpose thereof.

"(j) Cause any expense to the debtor in the form of long distance telephone calls, telegram fees or other charges incurred by a medium of communication, by concealing the true purpose of the debt collector's communication.

"(k) Attempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten to take any action which the debt collector in the regular course of business does not take.

"(L) Use any form of communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a governmental agency, governmental official or an attorney at law when it is not in fact so approved or authorized.

"(m) Represent that an existing debt may be increased by the addition of attorney fees, investigation fees or any other fees or charges when such fees or charges may not legally be added to the existing debt.

"(n) Collect or attempt to collect any interest or any other charges or fees in excess of the actual debt unless they are expressly authorized by the agreement creating the debt or expressly allowed by law.

"(o) Threaten to assign or sell the debtor's account with an attending misrepresentation or implication that the debtor would lose any defense to the debt or would be subjected to harsh, vindictive or abusive collection tactics.

"(3) It shall be an unlawful collection practice for a debt collector, by use of any direct or indirect action, conduct or practice, to enforce or attempt to enforce an obligation made void and unenforceable by the provisions of ORS 759.720(2) to (4)."