Argued and submitted March 15, judgment and supplemental judgment on counterclaim under ORS 646.641 reversed; otherwise affirmed August 17, 2005

## PRO CAR CARE, INC.,
*Appellant,*

*v.*

## L. Kaye JOHNSON,
*Respondent.*

0206-05835; A123448

118 P3d 815

David Schuck argued the cause and filed the briefs for appellant.

Danny H. Gerlt argued the cause and filed the briefs for respondent.

Before Edmonds, Presiding Judge, and Wollheim* and Schuman, Judges.

SCHUMAN, J.

---

\* Wollheim, J., *vice* Richardson, S. J.

**SCHUMAN, J.**

Plaintiff, an automotive repair shop, brought this action under ORS 30.701 against defendant, a customer, after she stopped payment on a check that she wrote to pay for work plaintiff had performed on her motor home. Defendant counterclaimed, alleging a violation of ORS 646.639, the Unfair Debt Collection Practices Act (UDCPA). The trial court ruled in favor of defendant on both the claim and counterclaim, awarding her $200 in damages on the counterclaim. In a supplemental judgment, the court also awarded defendant $8,000 in attorney fees for successfully defending against plaintiff's claim on the stopped check and $2,000 in attorney fees for prevailing on her claim for unlawful debt collection practices. Plaintiff appeals. We reverse on the counterclaim and otherwise affirm.

In early December 2001, in preparation for a trip from Oregon to Arizona, defendant decided to have her motor home checked for problems and repaired; it was a 1989 vehicle, used as a home and not driven for the previous six months. She tried to drive the vehicle to plaintiff's shop, but eventually had to have it towed in. Once it was there, she asked plaintiff to "change two spark plugs and just basically look it over to see if there might be something that needed to be fixed," and to call her before performing any work beyond replacing the spark plugs. After examining the motor home, plaintiff called defendant and told her that, in addition to new spark plugs, she also needed to replace the spark plug wires, some belts, the fuel filter, and the fuel tank switching valve. She authorized that work and plaintiff performed it. When she came to pick up the motor home the next day, the bill came to $1,065.17. She paid with a personal check dated December 6, 2001. The invoice that she received contained a list of recommended additional repairs, the cost of which would be approximately $870.00.

When defendant tried to leave plaintiff's shop, the motor home would not start. Defendant then filled the gas tank; she was then able to start the vehicle, and she drove it home. When she tried to start the vehicle later that night, however, it was again out of gas. The next morning, defendant called plaintiff to report the problem and told plaintiff's

employee that, unless plaintiff paid to have the motor home towed in and repaired, she was going to stop payment on the check. Plaintiff's employee agreed that plaintiff would pay for towing if it determined that the breakdown resulted from its own work, but not if the problem was something new. Defendant chose not to have the vehicle towed. Without telling plaintiff, she then stopped payment on the check.

That occurred on a Thursday afternoon. The following Monday morning, defendant called plaintiff and proposed a solution: She would pick up a mechanic from plaintiff's shop and bring him to the motor home so that he could perform the repairs necessary to put it in condition to drive to the shop. Plaintiff, still unaware that defendant had stopped payment on the check, agreed. The problem turned out to be a faulty carburetor. Plaintiff fixed it and defendant again paid by check.

Shortly thereafter, plaintiff discovered that defendant had stopped payment on the first check. Plaintiff requested payment, and defendant sent two checks totaling $570.00, leaving a balance of $495.17 on the stopped check. When, in April 2002, defendant had not paid that balance, plaintiff's attorney sent her a letter demanding payment of the total amount of the stopped check, plus $25.00 "as a returned check charge," and informing her that if she did not pay, defendant would file a lawsuit in which it would seek, in addition to the above charges, $1,565.17 in statutory damages.

Defendant did not respond, and plaintiff filed this action, as threatened, under ORS 30.701.[1] Defendant counterclaimed, alleging (in her amended answer) that plaintiff's

---

[1] ORS 30.701 provides, in part:

"(1) In any action against a maker of a dishonored check, a payee may recover from the maker statutory damages in an amount equal to $100 or triple the amount for which the check is drawn, whichever is greater. Statutory damages awarded under this subsection are in addition to the amount for which the check was drawn and may not exceed by more than $500 the amount for which the check was drawn. The court shall allow reasonable attorney fees at trial and on appeal to the prevailing party in an action on a dishonored check and in any action on a check that is not paid because payment has been stopped.

"(2) Statutory damages and attorney fees under subsection (1) of this section may be awarded only if the payee made written demand of the maker of the check not less than 30 days before commencing the action and the maker failed to tender to the payee before the commencement of the action an amount

demand amounted to an unlawful debt collection practice. The case was tried to the court, which, as noted above, ruled in favor of defendant on the claim and the counterclaim.

On appeal, plaintiff assigns error to the trial court's ruling that defendant had good cause to stop payment on the check, thereby defeating plaintiff's claim under ORS 30.701(6) (allowing recovery only if payment is stopped "without good cause"); to the trial court's ruling that plaintiff violated paragraphs (2)(k) and (n) of ORS 646.639; and to the trial court's denial of plaintiff's motion to amend its pleadings to conform to the evidence at trial. Defendant cross-assigns error to the trial court's denial of her motion to dismiss on the ground that, by failing to allege that she lacked good cause to stop payment on the check, plaintiff did not state a claim. She also cross-assigns error to the trial court's denial of her claim under paragraph (2)(m) of ORS 646.639.

■ We begin with the central issue in the ORS 30.701 claim, that is, whether the trial court erred in ruling that defendant had good cause to stop payment. Most of the historical facts underlying the court's ruling are not in dispute. The parties agree about what work plaintiff performed, when it performed that work, what checks defendant gave plaintiff, when she gave them, which one she stopped, and when she stopped it. Further, the parties appear to agree that defendant, at the time she stopped payment on the check, knew that her recently repaired motor home did not run. The parties also appear to agree that, in fact, as events ultimately

---

of money not less than the amount for which the check was drawn, all interest that has accrued on the check under ORS 82.010 as of the date of demand and any charges imposed under subsection (5) of this section.

"* * * * *

"(5) If a check is dishonored, the payee may collect from the maker a reasonable fee representing the cost of handling and collecting on the check. The total fee for any single check may not exceed $25. Any award of statutory damages under subsection (1) of this section must be reduced by the amount of any charges imposed under this subsection that have been paid by the maker or that are entered as part of the judgment.

"(6) The provisions of this section apply only to a check that has been dishonored because of a lack of funds or credit to pay the check, because the maker has no account with the drawee or because the maker has stopped payment on the check without good cause. A plaintiff is entitled to the remedies provided by this section without regard to the reasons given by the drawee for dishonoring the check."

transpired, she did *not* have "good cause": Although neither she nor plaintiff knew it at the time she issued the stop payment order, the motor home's failure to run was caused by a defect for which plaintiff was not responsible. Thus, the dispute presents only the question whether, when defendant stopped payment, she had "good cause." We review the trial court's ruling that she did for errors of law. *Wescold, Inc. v. Logan International, Ltd.*, 120 Or App 512, 519, 852 P2d 960 (1993), *rev den*, 318 Or 459 (1994).

Plaintiff maintains that, in order to prevail, defendant had to prove that an objectively reasonable person in her situation would have believed that good cause to stop payment existed. Defendant maintains that she need show only that she personally had such a belief. Each party argues that, in any event, it should prevail under either standard. Defendant is correct. Under either standard, she prevails.

When she stopped payment on the check, defendant had entrusted her vehicle to plaintiff; had authorized an escalating level of repair work, beginning with spark plug replacement and ending with over $1,000 worth of parts and labor; and had refused to authorize further repairs, estimated to cost an additional $800. She had picked up her vehicle and, when it did not run, filled the tank with gas, only to discover, later that night, that the vehicle once again would not start and had no gas. Plaintiff then offered to pay for a tow if the malfunction turned out to be caused by plaintiff's work, but it did not offer to remedy without charge any defects it might have caused. Further, the invoice that defendant had received, although it contained a list of needed repair work, listed nothing that would cause the malfunction that actually occurred; the list indicated that the vehicle needed new radiator hoses, universal-joints, heater hoses, as well as a coolant flush and a fuse, none of which could be thought by a reasonable person to be implicated in losing an entire tank of gas in a relatively short drive home.[2] On the

---

[2] While the invoice listed nothing that would cause the malfunction that occurred, the parties dispute whether, on her first visit, defendant received a longer list that did indicate that the carburetor needed work.

other hand, the invoice included in the list of work that plaintiff *had* performed a number of tasks that might have implicated lost fuel: a replacement of the fuel filter and fuel tank switch valve. A reasonable person in defendant's situation—and, we have no reason to disbelieve, defendant herself—could believe that the services she had received were not competently performed. In short, she had good cause to stop payment on the check, and the trial court did not err in so ruling.[3] That conclusion eliminates the need for us to address defendant's contention that plaintiff's pleading was inadequate.

■    In its second assignment of error, plaintiff challenges the trial court's ruling that plaintiff engaged in an unlawful debt collection practice under ORS 646.639 by sending defendant a demand letter containing the following paragraph:

> "Demand is herewith made upon you for the immediate, full payment, of this claim plus $25.00 as a returned check charge. If payment is not made within 30 days, [plaintiff] Pro Car Care, Inc. has granted authority for this firm to file a lawsuit. Pursuant to ORS 30.701, the suit will request payment of the check in the amount of $1,065.17, statutory damages in the amount of $1,565.17, cost of handling fee of $25.00, plus reasonable attorney fees."

The $1,565.17 figure includes the total amount of the stopped check (despite the fact that defendant had already paid $570 on it), plus the $500 statutory penalty under ORS 30.701(1). Defendant alleged violation of three paragraphs of ORS 646.639(2):

> "It shall be an unlawful collection practice for a debt collector, while collecting or attempting to collect a debt to do any of the following:

> "* * * * *

---

[3] ORS 30.701 does not entitle a payee to money owed after stopped payment; it provides a statutory remedy for stopping payment without good cause. While it is possible that defendant owed plaintiff $1,065.17, of which she paid only $570.00, because plaintiff expressly waived all claims under the contract that the check might have created, and filed suit exclusively under ORS 30.701, we do not address any such claims.

"(k)  Attempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist[.]

"* * * * *

"(m)  Represent that an existing debt may be increased by the addition of attorney fees, investigation fees or any other fees or charges when such fees or charges may not legally be added to the existing debt.

"(n)  Collect or attempt to collect any interest or any other charges or fees in excess of the actual debt unless they are expressly authorized by the agreement creating the debt or expressly allowed by law."

We infer from the trial court's oral ruling that it ruled in favor of defendant on paragraphs (k) and (n) and against her on paragraph (m). As noted above, plaintiff assigns error to the ruling on paragraphs (k) and (n), and defendant cross-assigns error to the ruling on paragraph (m). We take up the rulings in turn.

*Porter v. Hill*, 314 Or 86, 838 P2d 45 (1992), is fatal to defendant's claim under paragraph (k). In that case, the plaintiff, an attorney, billed his client for $26,623.25 and subsequently filed an action against him for nonpayment. The defendant counterclaimed, arguing, among other things, that by billing and suing him for a debt in an amount that the plaintiff should have known he had no right to collect, the plaintiff violated ORS 646.639(2)(k). *Id.* at 88. The plaintiff checked his records and discovered that, in fact, the defendant owed him only $3,112.75. *Id.* at 89. The Supreme Court affirmed the trial court's dismissal of the defendant's UDCPA claim. It first noted that, under the UDCPA, a "debt" includes an "*alleged* obligation." *Id.* at 91 (quoting ORS 646.639(1)(e), adding emphasis). Relying on context, the court concluded that paragraph (k) prohibited only particular abusive methods of debt collection such as occurred, for example, when a utility attempted to collect on a customer's debt by terminating services even though the utility had reason to believe that such a method was not legally available, *id.* at 92 (citing *Isom v. P.G.E.*, 67 Or App 97, 106, 677 P2d 59 (1983), *rev den*, 297 Or 272 (1984)), or when a bank froze the debtor's checking account in order to enforce collection of the debtor's debt to a

different bank, *id.* (citing *Rowe v. Bank of the Cascades*, 68 Or App 490, 494-95, 683 P2d 93 (1983)). The court then held that bringing a civil action was not an unlawful debt collection method, even when the action alleged a debt that the creditor knew or should have known did not exist. *Id.* at 95.

Under these precepts, plaintiff did not violate paragraph (2)(k). The demand letter amounted to a threat to file a civil action. Plaintiff had a right to file that action; it was a remedy to which it was entitled. ORS 30.701. Under *Porter*, the fact that plaintiff might not have been entitled to the amount that it demanded because it had already received $570.00 as partial payment on the debt created by the stopped check is not relevant.

■ Defendant's claim under paragraph (n) also lacks merit. In *Hedrick v. Spear*, 138 Or App 53, 61, 907 P2d 1123 (1995), this court extended the rationale underlying *Porter* and paragraph (2)(k) to claims under paragraph (n), holding that "the filing of a legal action seeking to recover allegedly unauthorized charges is not 'the collection or attempt to collect' prohibited by ORS 646.639(2)(n). Rather, it is a correct means of resolving a disputed debt and charges." Plaintiff's demand letter in the present case was a necessary first step in filing a legal action under ORS 30.701; in order to receive statutory damages and attorney fees under that statute, plaintiff had to make "written demand of the maker of the check not less than 30 days before commencing the action[.]" ORS 30.701(2). We therefore consider the letter as part of the legal action itself and conclude that plaintiff did not violate paragraph (n) by sending it to defendant.

■ We turn finally to paragraph (m), which prohibits a debt collector from "[r]epresen[ting] that an existing debt may be increased by the addition of attorney fees, investigation fees or any other fees or charges when such fees or charges may not legally be added to the existing debt." Even if we were to conclude that the rationale from *Porter* and *Hedrick* does not extend to claims under paragraph (m)—an issue we do not reach—defendant's claim still fails. Plaintiff's demand letter threatened to bring legal action for the full amount of the stopped check plus statutory damages, a handling fee, and attorney fees. ORS 30.701 authorizes all of

those elements. Subsection (1) permits an action for "the amount for which the check was drawn"—not, as defendant appears to maintain, for the amount for which the check was drawn minus any partial payments—as well as statutory damages and reasonable attorney fees. Subsection (5) authorizes a handling fee. Plaintiff demanded no more.

Defendant also argues that, by demanding both statutory damages and a handling fee, plaintiff violated the part of subsection (5) that states, "[a]ny award of statutory damages * * * must be reduced by the amount of any [handling] charges imposed under this subsection that have been paid by the maker or that are entered as part of the judgment." That sentence, however, is not a prohibition on what the payee of a stopped check may demand; it is instruction to a court about how to calculate any award of damages it might make.

In sum, plaintiff did not violate any provision of the UDCPA and the trial court erred in concluding otherwise.

■ ■ Finally, plaintiff assigns error to the trial court's denial of its motion to conform the pleadings to the evidence it presented at trial. The motion did not supply the proposed pleadings, but we infer, based on plaintiff's brief, that it sought to add a specification seeking to recover $298.78 for parts and labor that it supplied and that defendant did not pay for. That specification, presumably, would have been in equity based on some theory such as unjust enrichment or *quantum meruit*. Although ORCP 23 A instructs that "leave [to amend] shall be freely given," we review a trial court's determination to deny a motion to amend the pleadings for abuse of discretion; we will reverse only when that determination "exceeds the bounds of reason." *Ramsey v. Thompson*, 162 Or App 139, 144-45, 986 P2d 54 (1999), *rev den*, 329 Or 589 (2000). Denying an amendment that would "substantially change the cause of action" is not unreasonable. *Engelcke v. Stoehsler*, 273 Or 937, 944, 544 P2d 582 (1975). Here, granting plaintiff's motion would have injected an equitable claim based in quasi-contract into a legal action based on statutory law. In denying that motion, the trial court did not abuse its discretion.

Judgment and supplemental judgment on counter-claim under ORS 646.641 reversed; otherwise affirmed.