Argued September 6, reversed with instructions October 2, 1968

# DENLEY, *Respondent, v.* MUTUAL OF OMAHA, *Appellant.*

445 P. 2d 505

*Curtis W. Cutsforth,* Portland, argued the cause for appellant. With him on the briefs were King, Miller, Anderson, Nash & Yerke, Portland.

*John C. Anicker, Jr.,* Oregon City, argued the cause for respondent. On the brief were Jack, Goodwin & Anicker and Glenn R. Jack, Oregon City.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, DENECKE and MENGLER, Justices.

MENGLER, J. (Pro Tempore).

This is an action at law brought to recover for "confining total loss of time" benefits allegedly accrued under an insurance policy issued by defendant. The case was tried before a jury which returned a verdict for the plaintiff for $8,530. The trial court entered judgment on the verdict.

The question presented on appeal is did the trial court err in the following particulars: (1) In denying defendant's motion for a directed verdict at the close of the testimony; (2) In permitting plaintiff to amend his complaint during the course of the trial; and (3) In failing to give two of defendant's requested instructions.

The basic facts giving rise to the action are: In July 1964, plaintiff, age 53, was hospitalized for an acute thrombophlebitis of the legs, which is commonly described as a clotting of the veins of the legs. The plaintiff was discharged from the hospital to home care on August 24, 1964. Plaintiff was the insured

under a policy issued by defendant, which, as it is pertinent here, provided in part as follows:

> "CONFINING TOTAL LOSS OF TIME: Benefits will be paid during continuous total loss of time while there is continuous confinement at the rate of the Monthly Benefit per month so long as the Insured lives.
>
> "\* \* \* \* \* \*
>
> "The term 'confinement', referred to in Part E, means that period of time during which sickness requires the Insured's remaining withindoors and receiving regular attendance therein by a legally qualified physician, other than himself. Confinement shall not be considered terminated by reason of transportation of the Insured for necessary treatment at the doctor's office or hospital."

■ Courts have adopted various theories in resolving controversies arising out of continuous confinement provisions. This court has construed the continuous confinement clause as describing the nature and extent of an insured's illness, or disability, rather than to prescribe or set out the limitations upon the conduct of an insured.

In *Purcell v. Wash. Fid. Nat. Ins. Co.*, 146 Or 475, 498, 30 P2d 742 (1934), Mr. Justice ROSSMAN wrote:

> "Our examination of the authorities convinces us that confinement within the four walls of one's home every moment of the period for which indemnity is sought is unnecessary. Before a recovery can be had under a clause similar to that under consideration, the insured must be afflicted with an illness which men commonly regard as a confining illness. When the illness is sufficiently severe to confine the insured to his home for substantially all of the time, an occasional excursion outside to secure medical attention or to secure the healing effect of sunshine will not defeat recovery. We

take the precaution to add that mere loss of income without necessary confinement will not suffice. Malingering cannot augment the amount of recovery, and trips to one's place of business for business purposes is evidence that the insured is no longer confined indoors. The trips outdoors must be taken for the exclusive purpose of facilitating recovery."

This test, or theory, has been followed by courts in other jurisdictions.

"Was there any material evidence that plaintiff's illness was so serious that it was in the nature of a confining illness, or one commonly regarded as such? * * *." *Mutual Benefit Ass'n v. King*, 55 Tenn App 72, 79, 396 SW2d 94 (1965).

See earlier cases cited in Annotation, 29 ALR2d 1420 (1953).

■■ A directed verdict requires that there is a complete absence of proof on some essential issue, or that there is no conflict in the testimony and it is susceptible of only one construction. The court must view the evidence most favorably to the plaintiff and give him every favorable inference that may be drawn from the evidence. *Young v. Crown Zellerbach*, 244 Or 251, 417 P2d 394 (1966).

We need, therefore, to determine whether there was any substantial evidence to prove that plaintiff's illness was a confining one or was commonly regarded as such.

The only medical testimony was given by David C. Grimwood, M.D., who was called by the plaintiff and on direct examination testified, in part, as follows:

"Q And when he came home from the hospital

what was his condition with reference to being ambulatory or being able to work?

"A He was ambulatory, but he was not able to work.

"* * *

"Q During the time you have taken care of him from July 21st, '64, until the present time has he at any stage been employable?

"A No, he hasn't.

"* * *"

Upon cross-examination Dr. Grimwood testified, in part, as follows:

"Q Along toward the end of the hospitalization, say, the last two or three days prior to his discharge was he an ambulatory patient?

"A Yes.

"Q Able to walk around?

"A Yes.

"Q And had his condition improved?

"A Yes, sir, he had improved.

"Q All right. Then would you continue after he got out of the hospital on August 24th, when did you next see him?

"A On August 27th.

"Q Is that a visit at your office?

"A Yes.

"Q And he was ambulatory at the time?

"A Yes.

"* * *

"Q Taking say from the time he got out of the hospital on August 24th, 1964, and I think, you have covered he saw you once in January, '65, once in February, once in March, twice in July, once in October and twice in December.

"Now, were those visits with you, yourself, came in for consultation or for the prothrombin?

"A It was for both prothrombin and to follow

the situation. He was not responding to treatment for the thrombophlebitis.

"Q During the period he was able, was he not, to be up and around?
"A Yes.

"Q To drive in to your office?
"A Yes, sir.

"Q You were aware he was driving his own car?
"A Yes, sir.

"Q There was no medical reason why he was not able to do this?
"A That's correct.

"Q You had not, I take it, confined him to his house and confined him to his bed?
"A Correct.

"* * *

"Q All right. Now, from the time that you first saw him, and I think it was July 21, 1964, with reference to this leg condition on up to the present time, Doctor, have you ever seen Mr. Denley, made a house call on him? Have you ever seen him at his residence?
"A Not to my knowledge, no.

"* * *

"Q Now, during this same period, after he got out of the hospital back in August of '64, and up until the present time with the exception of the time when he was hospitalized in the interim period, as I understand it, Mr. Denley has been ambulatory, able to walk around, drive his car?
"A Right.

"Q Go away from his residence to your office?
"A Yes, sir.

"Q And other places that he may need to go to transact his own business?
"A Yes, sir."

■ The plaintiff's medical evidence shows that plaintiff's illness was disabling and that he was unemployable, but that the nature and extent of the illness was not of such as to require confinement to the home. Plaintiff's physician testified that he did not prescribe home confinement; that the plaintiff was ambulatory and was able to be up and around; that he was able to drive a car; and that the physician made no house calls. The only inference to be drawn from the plaintiff's medical testimony is that the decision to remain at home was that of the plaintiff and was not upon advice of the doctor, nor, in the doctor's opinion, necessitated by the illness.

To allow recovery under these facts would in effect require us to construe the continuous confinement provision to permit recovery if it were shown that insured had an illness which rendered him unemployable and that he chose to remain substantially house confined despite medical advice to the contrary. We cannot so liberalize the construction of continuous house confinement provisions.

■ The plaintiff not having produced any substantial evidence sufficient to establish continuous confinement by his illness, the trial court erred in denying defendant's motion for a directed verdict. The judgment of the trial court is reversed and the trial court is directed to enter judgment for the defendant.

Reversed with instructions.