Argued March 9, reversed and remanded May 10, petition for rehearing denied June 21, 1977, see 278 Or 709, 565 P2d 755

# WOLVERTON, *Appellant,*

*v.*

# STANWOOD et al, *Respondents.*

## (No. 404-722, SC 24418)

563 P2d 1203

Frank M. Ierulli, Portland, argued the cause and filed a brief for appellant.

Rees Johnson, Portland, argued the cause for respondents. With him on the brief was David S. Shannon, Portland.

Before Denecke, Chief Justice, and Howell, Lent, and O'Connell, Justices.

HOWELL, J.

**HOWELL, J.**

Plaintiff filed an action for damages under the Unlawful Trade Practices Act, ORS 646.605 *et seq.* A jury returned a verdict for plaintiff for $500 general damages and $500 punitive damages. The trial court granted defendant's motion for a judgment n.o.v.[1] Plaintiff appeals.

■ The primary issue on appeal is whether the Act applies to the facts in the instant case. Because this issue is before us on appeal from a judgment n.o.v., the facts are viewed in the light most favorable to plaintiff. *See, e.g., Krause v. Eugene Dodge, Inc.,* 265 Or 486, 509 P2d 1199 (1973); *Denley v. Mutual of Omaha,* 251 Or 333, 445 P2d 505 (1968).

Defendants, as a partnership, operate a Texaco service station known as B. & M. Texaco. Plaintiff answered an advertisement placed in a newspaper by the defendants for the sale of a 427 cubic inch Chevrolet engine. While inspecting the engine, he was again orally assured that it was a 427. However, after purchasing the engine, plaintiff discovered it was a 400 cubic inch engine, rather than a 427. According to plaintiff, defendants also represented the engine to be in good running condition and that it had only about 18,000 miles on it. Plaintiff contends that each of these representations was false, and there was evidence to support this contention.

ORS 646.608(1) provides:

"A person engages in a practice hereby declared to be unlawful when in the course of his business, vocation or occupation he:

"* * * * *.

"(g) Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real

---

[1]Plaintiff's complaint also contained two additional counts for fraud and for breach of express warranty, but the jury returned a verdict for defendants on these two counts.

estate or goods are of a particular style or model, if they are of another;

"* * * * *."

■■ Because of the jury's verdict for plaintiff, we must assume that the engine was sold by the B. & M. Texaco partnership and that the "standard, quality, or grade" of the engine was not as represented, although there was conflicting evidence on these issues. The only remaining issue is whether the engine was sold "in the course of [the partnership's] business, vocation or occupation." Ordinarily this, too, is a question of fact for the jury, but it is the duty of the court to determine whether there is any substantial evidence to support that finding. When, as in this case, the wording of the statute is ambiguous, the court must first interpret the statute so that the evidence can be reviewed against an objective and meaningful background.

Although the statutory language in question was taken from Section 2 of the Uniform Deceptive Trade Practices Act, 7 ULA 336 and 354, we have been unable to discover any previous judicial interpretation of that language or any legislative history which would explain its intended meaning. Moreover, the wording of similar provisions in analogous statutes is so different that it is of little or no assistance in defining the meaning of this provision. *See, e.g.,* Uniform Commercial Code § 2.104; ORS 72.1040; Uniform Consumer Sales Practices Act, § 3, 7 ULA Supp 229 (1976).

It could be argued that the phrase "in the course of his business, vocation or occupation" should be construed so as to apply to all unlawful practices except those which arise out of strictly private transactions and which are totally unconnected with the business or employment of the defendant. On the other hand, the statute could be interpreted so as to apply only to those unlawful practices which arise out of the ordinary, everyday activities of the defendant's business

[ 344 ]

or occupation. The former construction could be justified on the basis of a broad reading of the general policy of the statute to discourage deceptive trade practices and to provide a viable remedy for consumers who are damaged by such conduct. The latter construction could be supported by a broad reading of the limitation which restricts the application of the statute to those unlawful practices that arise out of the course of the defendant's business. Such an interpretation would reflect a presumption that this restriction was intended to limit the application of the statute to those situations which tend to present a continuing, and therefore more serious, threat to the general public.

■ In the absence of any guidance as to which of these policies the legislature would have intended to prevail, we have determined to seek a middle ground. We believe that the statute should be applied only to those unlawful practices which arise out of transactions which are at least indirectly connected with the ordinary and usual course of defendant's business, vocation or occupation.

■ Applying that construction to this case, we believe that the jury could have reasonably found that the sale of the automobile engine was at least indirectly connected with the ordinary business of defendants' automotive service station. Moreover, there was testimony that on at least one previous occasion the defendants had procured an engine for another customer and installed it in his car. Therefore, we believe that the entry of a judgment for defendants notwithstanding the jury's verdict was in error.

Reversed and remanded with directions to reinstate the judgment for plaintiff.