DANIEL N. GORDON, PC,
an Oregon professional corporation;
and Daniel N. Gordon, individually,
*Plaintiffs-Respondents,*

*v.*

Ellen ROSENBLUM,
Attorney General; and
Oregon Department of Justice,
*Defendants-Appellants.*

Lane County Circuit Court
161208399; A154184

370 P3d 850

Matthew J. Lysne, Assistant Attorney General, argued the cause for appellants. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

R. Daniel Lindahl argued the cause for respondent Daniel N. Gordon, P.C. With him on the brief was Lindahl Kaempf PC.

Daniel N. Gordon argued the cause and filed the brief *pro se.*

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.*

EGAN, J.

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

**EGAN, J.**

This civil case involves the Unlawful Trade Practices Act (UTPA), specifically ORS 646.607(1) and ORS 646.608(1)(b),[1] and the Unlawful Debt Collection Practices Act (UDCPA), ORS 646.639.[2] Plaintiffs, an attorney and his law firm, brought this action for a declaratory judgment against defendants, the Oregon Department of Justice (DOJ) and the Attorney General, seeking a declaration that the UTPA and UDCPA do not apply to their alleged litigation and debt collection practices. Plaintiffs also sought a permanent injunction. Plaintiffs moved for summary judgment on all claims. Defendants filed a cross-motion for summary judgment, contending (among other things) that plaintiffs had violated the UTPA and UDCPA. The trial court concluded that the UTPA and UDCPA did not apply to plaintiffs' alleged litigation and debt collection practices, and accordingly, granted plaintiffs a permanent injunction, enjoining defendants from filing an action against plaintiffs for violations of the UTPA.

On appeal, defendants raise seven assignments of error, addressing three main issues: (1) whether the UTPA applies to plaintiffs' debt collection litigation, (2) whether the UDCPA applies to plaintiffs' debt collection litigation, and (3) whether the trial court erred in granting a permanent injunction in favor of plaintiffs. For the reasons discussed below, we reverse the declaratory judgment in part and remand with instructions to enter judgment declaring the rights of the parties in accordance with this opinion; reverse the permanent injunction; and otherwise affirm.

In an appeal arising from cross-motions for summary judgment, the granting of one motion and the denial of the other are both subject to appellate review. *Doyle v. City of Medford*, 256 Or App 625, 632, 303 P3d 346 (2013). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to prevail as a matter of law. *Hamlin v. Wilderville Cemetery Association*, 259 Or App 161, 163, 313 P3d 360 (2013) (citing

---

[1] ORS 646.607(1) and ORS 646.608(1)(b) are quoted below, 276 Or App at 806, 810.

[2] ORS 646.639 is quoted below, 276 Or App at 814-15.

ORCP 47 C). In determining whether a genuine issue of material fact exists, we review the summary judgment record "in the light most favorable" to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Id.* at 163-64 (citation omitted).

## I. FACTS AND PROCEDURAL BACKGROUND

Plaintiff Daniel N. Gordon is an attorney licensed to practice in Oregon. Gordon is the president of plaintiff Daniel N. Gordon, P.C. (the Gordon firm), a law firm that represents creditors and debt collectors in their attempt to collect debts—usually defaulted consumer credit card debt.

From 2002 to 2012, the Financial Fraud/Consumer Protection Section of the Civil Enforcement Division of DOJ[3] received numerous complaints regarding the debt collection practices by the Gordon firm. Based on those complaints, in June 2011, DOJ conducted a preliminary investigation of the Gordon firm and determined that further investigation was warranted. DOJ served the Gordon firm with a "civil investigative demand" (CID) pursuant to ORS 646.618,[4] in which it included a demand for "Exhibit A Documents to be Produced" and "Exhibit B Interrogatories."

The Gordon firm responded to the CID and Gordon participated in a deposition. In its response to the CID Exhibit B Interrogatories, the Gordon firm explained that it "represent[s] clients in all stages of debt collection activity, from pre-suit collection efforts and negotiation, through the civil process, and including post-judgment execution efforts." Typically, the Gordon firm collected on credit card debt owed to financial institutions such as U. S. Bank and American Express. The Gordon firm also provided the

---

[3] For simplicity we refer to the Financial Fraud/Consumer Protection Section of the Civil Enforcement Division of DOJ as DOJ throughout the remainder of this opinion.

[4] ORS 646.618(1) provides, as relevant:

"Except as provided in ORS 646.633, when it appears to the prosecuting attorney that a person has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by ORS 646.607 or ORS 646.608, the prosecuting attorney may execute in writing and cause to be served an investigative demand upon any person who is believed to have information, documentary material or physical evidence relevant to the alleged or suspected violation."

following summary of its collection activities that involved Oregon consumers from 2008 to 2010. The following chart is a summary of that information (listed under each year is the number of accounts per debt collection activity):

| Activity | 2008 | 2009 | 2010 |
|---|---|---|---|
| Pursued a debt | 15,085 | 15,047 | 16,240 |
| Collected on a debt (in whole or in part) | 2,582 | 4,095 | 4,207 |
| Resolved a debt before judgment | 1,440 | 1,665 | 1,719 |
| Obtained a judgment against a debtor | 2,369 | 3,998 | 9,151 |

Based on that information, DOJ concluded that the Gordon firm "collected on a significant amount of attorneys' fees and interest on the debt through the process available to judgment creditors, e.g., garnishment." DOJ noted that the many debt collection actions that ended in default judgments were concerning because "we are aware that many of the debtors will not question debt collection efforts because they know they owe the underlying debt" and "many * * * lack financial or legal resources to understand the nature of the action against them or the consequences."

In its response to the CID Exhibit A Documents to be Produced, the Gordon firm provided copies of its files, specifically, a sampling of complaints that detailed the initiation of a lawsuit against a debtor. DOJ reviewed those complaints and observed that "[a]ll of the lawsuits alleged a non-statutory right to attorneys' fees and to interest on the underlying debt" and "[m]any [complaints] did not attach the credit cardmember contract that allegedly provided this right, or in some cases, the [Gordon firm] attached the wrong contract." DOJ noted that those practices were problematic "[b]ecause the [Gordon firm] regularly failed to attach the contract in the civil proceedings, [and therefore] it collected these amounts without ever having to prove that it or the creditor/owner of the debt was entitled to those sums."

DOJ also observed instances in which the Gordon firm "failed to follow the correct choice-of-law provisions in the applicable cardmember agreements." As a result of failing to follow the correct choice-of-law provisions, the Gordon

firm "either applied the wrong interest rate or filed claims for debts that were barred by the relevant state's statute of limitations provisions." DOJ noted that those instances were especially problematic, because "these issues were never litigated because the debtors would not challenge the lawsuit."

Based on the Gordon firm's response to the CID and Gordon's deposition, DOJ generally concluded that

> "the [Gordon firm] had a pattern and practice of filing thousands of breach of contract actions against credit card debtors and obtaining default judgments for attorneys' fees and interest in a manner that apparently took advantage of the debtors' legal ignorance, lack of resources and general belief that they could not fight the claim."

Specifically, DOJ found that plaintiffs violated the UTPA by (1) "[f]iling legal complaints seeking fee and interest awards without having adequate evidentiary basis to support entitlement to such fees or interest"; (2) "[m]aking false/ misleading representations to courts that a consumer contract includes attorney fees when plaintiffs have no basis for such representation"; and (3) "[f]ailing to disclose to consumers and to courts that plaintiffs do not have the applicable contract at the time of filing a complaint, and, therefore, [do] not have a basis to assert the right to collect attorney fees or interest." As a result, DOJ concluded that it had probable cause to sue to enjoin the Gordon firm and its attorneys from continuing to engage in unlawful trade practices under the UTPA, ORS 646.607(1), (6) and ORS 646.608(1)(b), and the UDCPA, ORS 646.639(2).

Following DOJ's investigation into plaintiffs' alleged violations of the UTPA and the UDCPA, DOJ served the Gordon firm with a "Proposed Assurance of Voluntary Compliance" (AVC) under ORS 646.632(2).[5] The AVC included, among others, the following proposed remedies to

---

[5] ORS 646.632(2) provides, as relevant:

"Except as provided in subsections (5) and (6) of this section, before filing a suit under subsection (1) of this section, the prosecuting attorney shall in writing notify the person charged of the alleged unlawful trade practice and the relief to be sought. Such notice shall be served in the manner set forth in ORS 646.622 for the service of investigative demands."

which the Gordon firm would agree to adhere: (1) state the amount of debt claimed to be owed separate from any additional charges or fees (*i.e.*, attorney fees and interest) added in its validation notices and/or demand letters; (2) not seek to recover its attorney fees as part of any judgment obtained by default; and (3) not attempt to collect time-barred debt. DOJ demanded that the Gordon firm execute the AVC, and if the firm refused, DOJ warned that it intended to sue to enjoin the firm's debt collection activities. The Gordon firm did not sign the AVC, and, instead, plaintiffs initiated this action against defendants.

Plaintiffs sought two forms of relief—a declaratory judgment and an injunction. In their first claim for relief, plaintiffs sought the following four declarations, each of which was denominated as a count: (1) "ORS 646.608(1)(b) and ORS 646.607(1) do not apply to plaintiffs' collection activities taken on behalf of their clients as to third-parties"; (2) "Gordon is not subject to the UTPA with respect to defendants' alleged violations and their attempt to regulate Gordon's conduct through enforcement of the UTPA"; (3) "plaintiffs' litigation activities as complained of by defendants are not subject to the UDCPA"; and (4) "defendants' attempt to regulate plaintiffs' activities in the practice of law violates Article III, section 1, of the Oregon Constitution by interfering with the [judiciary's powers]."

In plaintiffs' second claim for relief, they requested an injunction to prohibit defendants from enforcing the UTPA or UDCPA against plaintiffs in their litigation activities. Defendants answered that plaintiffs are subject to the UTPA and UDCPA and denied that plaintiffs were entitled to any relief.

Plaintiffs moved for summary judgment, and defendants filed a cross-motion for summary judgment. With regard to the claim for declaratory relief, the trial court granted summary judgment in plaintiffs' favor on Counts 1 and 3 and in defendants' favor on Counts 2 and 4.[6] With regard to the claim for injunctive relief, the court granted

---

[6] We note that the trial court failed to enter a declaration on Counts 2 and 4 in defendants' favor, however, its failure to do so does not affect our inquiry.

summary judgment in plaintiffs' favor. Consistent with those rulings, the court entered a judgment that provided, in part:

"(1) ORS 646.608(1)(b) and ORS 646.607(1) of the Unlawful Trade Practices Act do not apply to plaintiffs' collection activities taken on behalf of their clients against third-parties; and

"(2) Plaintiffs' litigation activities taken on behalf of their clients against third-parties are not subject to the Unlawful Debt Collection Practices Act (ORS 646.639 *et seq.*) as incorporated by ORS 646.607(6) of the Unlawful Trade Practices Act.

"IT IS FURTHER ORDERED AND ADJUDGED the defendants are permanently enjoined from bringing future enforcement actions under the Unlawful Trade Practices Act against plaintiffs relating to litigation activities taken on behalf of their clients against third-parties."

(Capitalization in original.)

On appeal, defendants raise multiple assignments of error addressing the following issues: (1) whether the UTPA applies to plaintiffs' debt collection litigation, (2) whether the UDCPA applies to plaintiffs' debt collection litigation, and (3) whether the trial court erred in granting a permanent injunction in favor of plaintiffs.[7]

## II. ANALYSIS

### A. *Unlawful Trade Practices Act*

In Count 1 of plaintiffs' first claim for relief, plaintiffs sought a declaration that they are not subject to the UTPA—specifically, ORS 646.607(1) and ORS 646.608(1)(b)—with

---

[7] Plaintiff Gordon responded separately from plaintiff, the Gordon firm. As part of his argument, he contended that "[t]he Attorney General and the [DOJ] have no authority to regulate the practice of law, including prescribing rules of procedure," and that "[a]ny attempt by DOJ to mandate judicial procedures would be a separation-of-powers violation" established in Article III, section 1. We reject those contentions as unreviewable because Gordon failed to cross-appeal the trial court's grant of summary judgment to defendants on Counts 2 and 4. *See Murray v. State of Oregon*, 203 Or App 377, 388, 124 P3d 1261 (2005), *rev den*, 340 Or 672 (2006) (cross-assignment of error was not sufficient to raise argument because "[plaintiffs] are seeking modification and reversal of that part of the judgment dismissing plaintiffs' separate claim for inverse condemnation. A cross-appeal is required under those circumstances.").

respect to their debt collection practices on behalf of their creditor and debt collector clients. Defendants responded that "ORS 646.607(1) applied to plaintiffs because they allegedly employed 'unconscionable tactics' in the collection of debts and that ORS 646.608(1)(b) applied to plaintiffs because they allegedly caused or created confusion about the source and certification of debts they collected, including rights to attorney fees, interest or other charges." The trial court concluded and declared that neither ORS 646.607(1) nor ORS 646.608(1)(b) applied to "plaintiffs' collection activities taken on behalf of their clients against third-parties."

On appeal, defendants contend that the trial court's declaration concerning Count 1 was based on an erroneous construction of ORS 646.607(1) and ORS 646.608(1)(b). Thus, we must construe the statutes in question.

In construing a statute, we first look at the text and context of the statute, then consider legislative history if it appears useful to our analysis, and lastly apply general maxims of statutory construction. *State v. Gaines*, 346 Or 160, 164-65, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

Before addressing the specific provisions of the UTPA at issue, we briefly highlight the UTPA's underlying policies and basic structure:

"The UTPA is a remedial statutory scheme, 'enacted as a comprehensive statute for the protection of consumers from unlawful trade practices.' *Pearson v. Philip Morris, Inc.*, 358 Or 88, 115, 361 P3d 3 (2015); *Raudebaugh v. Action Pest Control, Inc.*, 59 Or App 166, 171, 650 P2d 1006 (1982). As such, it is to be construed liberally to effectuate the legislature's intent, to the extent that a proposed construction is supported by the operative text. *See Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or 85, 90 n 4, 566 P2d 1177 (1977) (suggesting that the UTPA 'is to be interpreted liberally as a protection to consumers' and businesses alike); *Wolverton v. Stanwood*, 278 Or 341, 345, 563 P2d 1203 (1977) (finding a 'middle ground' between a 'broad reading' of the UTPA's general policy and the inherent limits of the operative text; construing the requirement that actionable conduct occur 'in the course of business' so as to apply 'only to those unlawful practices which arise out of transactions which

are at least indirectly connected with the ordinary and usual course of [a] defendant's business'). Thus, our inquiry is pervasively informed by the appreciation that the UTPA is a remedial statutory scheme that should, to the extent consonant with the *Gaines* construct, be construed so as to effectuate its consumer protection purposes."

*State ex rel Rosenblum v. Johnson & Johnson*, 275 Or App 23, 32, 362 P3d 1197 (2015) (brackets in *Wolverton*). We now address, in turn, whether each of the implicated provisions of the UTPA can apply to plaintiffs.

1. *ORS 646.607(1) can apply to plaintiffs' debt collection litigation.*

We begin with the text of ORS 646.607(1), which provides, in part:

"A person engages in an unlawful trade practice if in the course of the person's business, vocation or occupation the person:

"(1) Employs any unconscionable tactic in connection with selling, renting or disposing of real estate, goods or services, or collecting or enforcing an obligation[.]"

Thus, to establish a violation of ORS 646.607(1), the following requirements must be met: (1) a person, (2) in the course of the person's business, vocation, or occupation, (3) employs any unconscionable tactic, (4) in connection with selling, renting, or disposing of real estate, goods, or services, or collecting or enforcing an obligation.

The parties dispute whether the trial court correctly construed ORS 646.607(1) as imposing a requirement that, for a person to employ an "unconscionable tactic," that person must be in a "transaction" with the party adversely affected by that practice—in this case, the debtor. We note that ORS 646.607(1) does not, by its terms, impose a requirement that a person who employs an unconscionable tactic be a party to a particular transaction with a customer or debtor. To require that a "person" who "employs any unconscionable tactic" be a party to a particular transaction with a customer or debtor would add words to the statute. *See* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in

terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]"). Thus, nothing in the text of ORS 646.607(1) requires that there be a contractual or consumer relationship between a violator and customer.

Instead, plaintiffs rely on the definition of "unconscionable tactics" for their argument that the statute imposes such a requirement. For purposes of the UTPA, ORS 646.605(9) defines the term "unconscionable tactics" by listing examples:

"'Unconscionable tactics' include, *but are not limited to*, actions by which a person:

"(a) Knowingly takes advantage of *a customer's* physical infirmity, ignorance, illiteracy or inability to understand the language of the agreement;

"(b) Knowingly permits *a customer* to enter into a transaction from which the customer will derive no material benefit;

"(c) Permits *a customer* to enter into a transaction with knowledge that there is no reasonable probability of payment of the attendant financial obligation in full by the customer when due; or

"(d) Knowingly takes advantage of *a customer* who is a disabled veteran, a disabled servicemember or a servicemember in active service, or the spouse of a disabled veteran, disabled servicemember or servicemember in active service. * * *"

(Emphases added.) Plaintiffs emphasize that each of "the specific examples of 'unconscionable tactics' describe actions involving 'a customer.'" Therefore, plaintiffs reason that the principle of *ejusdem generis* applies. That principle describes the process of finding the meaning of a general term (here, "unconscionable tactics") by identifying common characteristics of the specific examples. *Lewis v. Cigna Ins. Co.*, 339 Or 342, 350-51, 121 P3d 1128 (2005). According to plaintiffs, in applying the principle of *ejusdem generis*, "it is necessary to conclude that the legislature intended that an action can be an unconscionable tactic only if it involves 'a customer.'" Consequently, plaintiffs argue that, "[b]ecause

DOJ's complaints about the Gordon firm do not involve conduct directed toward 'a customer,' but instead involve actions taken in litigation with adverse parties, the firm's actions cannot violate ORS 646.607(1)." We agree with plaintiffs that an act can be an unconscionable tactic only if it involves "a customer." However, we disagree with plaintiffs that the specific examples of "unconscionable tactics" indicate that "a person" who employs the unconscionable tactics against a customer, must have a consumer transaction with that customer.

The statute defining the term "unconscionable tactics"—ORS 646.605(9)—provides examples of interactions between "a person" and "a customer." The examples do not establish that the interaction must be between a person and that person's customer. The legislature's use of "a" as an indefinite article preceding "customer" refers to an "unidentified, undetermined, or unspecified person." *See Carroll and Murphy*, 186 Or App 59, 68, 61 P3d 964 (2003) (explaining that the legislature uses "a," as an indefinite article, to refer to an unidentified, undetermined, or unspecified object and uses "the" to indicate the intention to refer to a definite object); *State v. Rodriguez*, 217 Or App 24, 30-31, 175 P3d 471 (2007) ("[W]e ordinarily assume that the use of the indefinite article, as opposed to the definite article, has legal significance.").

The use of "a customer" indicates that the statute applies to a person who buys and receives real estate, goods, or services, which distinguishes the statute from applying to someone who does not buy and receive real estate, goods, or services. Each debtor that plaintiffs pursue a debt against is "a" customer—that is, the debtor is a customer of the credit card company. Nothing in the text of the statute defining "unconscionable tactics" requires that "a customer" must be a customer of the person employing the unconscionable tactic.

In addition, the definition of unconscionable tactics "include, but are not limited to" the enumerated examples. As a result, the nonexclusive list of examples allows for other "unconscionable tactics" used in collection practices that would violate ORS 646.607(1). A plain text and contextual

reading of ORS 646.607(1) does not indicate that plaintiffs must be in a consumer relationship with the debtor for the statute to apply—in other words, the statute does not require plaintiffs and a debtor to have a consumer relationship.

Next, we turn to the legislative history of ORS 646.607(1). ORS 646.607(1) was enacted in 1977 as section 4 of Senate Bill (SB) 296. *See* Or Laws 1977, ch 195, § 4. ORS 646.605(9), defining "unconscionable tactics," was enacted as part of the same bill. Or Laws 1977, ch 195, § 1(8). SB 296 added those statutory sections to the UTPA.

At a committee hearing on SB 296, Paul Romain— Chief Counsel for the Consumer Protection Division of DOJ and sponsor of SB 296—testified about the purpose of section 4 of the bill as amended. Romain explained that section 4 clarified that loans and extensions of credit are not covered under the bill. Tape Recording, Senate Committee on Labor, Consumer and Business Affairs, SB 296, Mar 7, 1977, Tape 12, Side 1 (statement of Paul Romain). However, Romain said that, if financial institutions that make loans and extensions of credit "use unconscionable tactics in collecting that loan, then we have jurisdiction over that." *Id.* He stated that the "problem that we have is that in the actual collection of that obligation there is really nobody out there that regulates that." *Id.* He specified that the "unconscionable tactics" provision in the bill was meant to cover collection of a debt. *Id.*

That legislative history supports our textual reading of the statute because it explains that SB 296 covers unconscionable tactics used in debt collection practice. Moreover, as discussed above, the "legislative history of the Oregon [UTPA] supports the view that it is to be interpreted liberally as a protection to consumers." *Denson,* 279 Or at 90 n 4. Therefore, we conclude that plaintiffs' debt collection practices can be covered by ORS 646.607(1), because plaintiffs' premise that the statute could never apply to their conduct because debtors are not their customers is incorrect.[8]

---

[8] Plaintiffs also rely on federal District of Oregon cases for the proposition that ORS 646.607(1) does not apply to plaintiffs because that statute is limited to consumer transactions. *See CollegeNET, Inc. v. Embark.com, Inc.,* 230 F Supp 2d 1167, 1173 (D Or 2001) ("Courts interpreting the UTPA have almost uniformly

The trial court erred when it declared that ORS 646.607(1) did not apply to plaintiffs' debt collection activities.

2. *ORS 646.608(1)(b) can apply to plaintiffs' debt collection litigation.*

We turn to ORS 646.608(1)(b), another section of the UTPA, which provides, in relevant part:

"(1)  A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:

"* * * * *

"(b)  Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services."

"Real estate, goods or services" are defined as "those that are or may be obtained primarily for personal, family or household purposes * * * and includes loans and extensions of credit." ORS 646.605(6)(a).

The trial court concluded that ORS 646.608(1)(b) did not apply to plaintiffs' litigation and debt collection practices because "[t]he act of legal representation is totally unconnected from 'loans or extensions of credit,' the 'real estate goods or services' at issue here," based on *Wolverton*, 278 Or at 345. In *Wolverton*, the court concluded that ORS 646.608(1)(b) "should be applied only to those unlawful practices which arise out of transactions which are at least indirectly connected with the ordinary and usual course of defendant's business, vocation or occupation." *Id.* In this case, the trial court explained its reasoning:

"Here, plaintiffs are in the business of legal representation. The act of legal representation is totally unconnected from 'loans or extensions of credit,' the 'real estate, goods or services' at issue here. Neither is legal representation itself a 'real estate, good or service.' By engaging in legal representation services, plaintiffs are intrinsically one step

recognized that it is first and foremost a consumer protection statute."). We agree that the UTPA is a consumer-protection statute; however, plaintiffs' argument is inapposite because the cited cases did not determine whether ORS 646.607(1) requires a consumer transaction between the plaintiff and the debtor defendant. Therefore, we reject plaintiffs' argument.

removed from the transactions at issue between plaintiffs' clients and their customers. There is nothing in the UTPA statute that gives this Court reason to conclude that it should treat plaintiffs as if they were themselves the lenders of the credit debts at issue."

On appeal, defendants contend that plaintiffs are subject to ORS 646.608(1)(b) because the text and context of the statute demonstrate "that there is no requirement that an unlawful practice must arise from a 'transaction' that an alleged violator was a party to." Defendants argue that the case law also establishes that there is no requirement of an underlying transaction between the violator and the victim of an unlawful practice. *See Raudebaugh*, 59 Or App at 176 (to recover under the UTPA, purchasers need not prove that the complained-of representation was made directly to purchasers or to a third party with intent that it be transmitted to purchasers). Defendants also contend that *Wolverton*, the case on which the trial court relied, does not support an interpretation that ORS 646.608(1)(b) does not apply to plaintiffs.

Plaintiffs respond that ORS 646.608(1)(b) does not apply to their legal representation of creditors in debt collection litigation because that "does not involve providing real estate, goods or services to consumers," but instead "involves actions by the Gordon firm in the course of representing its clients in litigation against debtors who obtained credit from the Gordon firm's clients." In other words, plaintiffs "recognize[] that professionals may violate the UTPA through false or misleading representations to consumers about *their own* goods or services" but argue that defendants' claim against "the Gordon firm does not involve the Gordon firm's own goods or services," but, rather, involves "the firm's clients' goods and services."

Therefore, we must determine whether the unlawful practice in the course of the person's business prohibited by ORS 646.608(1)(b) must be with respect to that person's own real estate, goods, or services.

We begin by noting that the statute's text does not explicitly require that the unlawful practice in the course of the person's business must be with respect to that person's own real estate, goods, or services. Defendants argue that

*Raudenbaugh*, which interprets ORS 646.608(1), is instructive and we agree.

In *Raudebaugh*, the plaintiffs—purchasers of a home—claimed that the defendant—a pest inspector—falsely represented to the sellers of the home that the home was free from insect infestation and, in doing so, violated the UTPA, specifically ORS 646.608(1)(e) and (g). 59 Or App at 168. The defendant pest inspector argued that "in order to recover under the UTPA plaintiffs must allege and prove that the alleged representation was made either directly by defendant to plaintiffs or to a third party with the intent that it be transmitted to plaintiffs" because "that is an essential element in the traditional common law test for actionable fraud." *Id.* at 170. We held that the plaintiffs did not need to prove that the alleged representation was made directly by the defendant to the plaintiffs or to a third-party with the intention that it be transmitted to plaintiffs. *Id.* at 172 (citing *Wolverton*, 278 Or at 345 ("The elements of common law fraud are distinct and separate from the elements of a cause of action under the [UTPA] and a violation of the [UTPA] is much more easily shown.")). Thus, *Raudebaugh* establishes that ORS 646.608(1) does not require an underlying transaction between the violator—in this case, plaintiffs—and the victim—debtor—of an unlawful practice.

Plaintiffs argue that *Raudebaugh* is distinguishable because

"the UTPA claim in *Raudebaugh* involved a violation made in the course of a consumer transaction involving the very service that defendant was in the business of providing to consumers. *Raudebaugh* would be relevant if, instead of suing the inspection company, the plaintiffs (or DOJ) had sued the inspection company's lawyers, alleging a UTPA violation based on representations about the inspection report that the lawyers made during litigation about the inspection report."

We disagree with plaintiffs. In *Raudebaugh*, the plaintiffs and the seller were in a direct transaction, but the plaintiffs were still able to prove that the defendant pest inspector, a third party, violated the UTPA because of the misrepresentation that it made to the seller on which the plaintiffs relied. Similar to *Raudebaugh*, a debtor and a creditor are in

a direct transaction, but a debtor may be able to prove that plaintiffs, a third party, violated the UTPA because of their misrepresentations to the debtor about that transaction on which the debtor relied. Thus, we reject plaintiffs' argument that *Raudebaugh* is materially distinguishable. In this case, defendants can prove that plaintiffs violated the UTPA even though they were not a party to the original creditor-debtor transaction.

Defendants also contend that *Wolverton*, a case on which the trial court relied, does not establish that ORS 646.608(1)(b) does not apply to plaintiffs because, when considered in its factual context, *Wolverton* "did not construe ORS 646.608(1) to require a 'transaction' by the person who engaged in the unlawful practice—as that was not an issue in dispute." Instead, defendants argue that "*Wolverton* clarified when and whether a transaction in question actually relates to a per[so]n's 'business, vocation or occupation'—an issue that is not in dispute in this case[.]" We agree with defendants that *Wolverton* does not apply to the issue in this case; therefore, the trial court erred in relying on *Wolverton* to conclude that ORS 646.608(1)(b) did not apply to plaintiffs.

Plaintiffs also make a policy argument, opining that, if there "is no difference between a lender or financing company and a law firm representing a lender or financing company in litigation" then "it would dramatically broaden the UTPA by making it applicable to lawyers and law firms in contexts never before imagined."[9] We reject plaintiffs' policy argument. This is not a case where the law firm

---

[9] Plaintiffs provide the following example to illustrate that such a construction of the statute would lead to absurd results: "[A] law firm representing a car dealership in litigation about a defective car would be subject to the UTPA liability for representations made during the litigation about the car's standard quality or grade." That example is distinguishable from this case because, as defendants point out, that example illustrates a completed consumer transaction—the car dealership makes a false misrepresentation to the buyer's detriment and the law firm represents the dealership after the transaction is complete. In contrast, in this case plaintiffs' alleged misconduct relates to a lawyer's conduct before the consumer transaction is complete—plaintiffs represent to debt collectors' clients (debtors) that they have outstanding debt, interest on the debt, and attorney fees owed, and debtors rely directly on that representation by plaintiffs. That difference is significant because plaintiffs are the ones making the allegedly misleading representations to the debtor's detriment. Thus, plaintiffs' example is inapposite.

representing a lender is being held responsible for the lender's misdeeds. Rather, this is a case of a law firm allegedly making misrepresentations directly to debtors to the debtors' detriment. ORS 646.608(1)(b) can apply narrowly to plaintiffs' alleged conduct because DOJ alleged that plaintiffs—albeit an attorney and law firm representing a creditor—made representations to debtors in the course of their debt collection that caused "confusion" and "misunderstanding" to the debtors about the ongoing loan or extension of credit transaction the debtors have with the creditors.

Moreover, as mentioned, the UTPA should be applied broadly to favor consumers—"The general policy of the UTPA is to discourage deceptive trade practices and to provide a viable remedy for consumers who are damaged by such conduct." *Raudebaugh,* 59 Or App at 171. In this case, the consumers—the debtors—may be damaged by plaintiffs' conduct if they rely on incorrect information provided to them by plaintiffs. As a result, the UTPA should be construed to effectuate its consumer protection purposes. ORS 646.608(1)(b) can apply to plaintiffs' debt collection practices because plaintiffs' argument that the statute could never apply to their practice based on debtors not being their customers is incorrect.

Thus, the trial court erred when it declared that ORS 646.608(1)(b) did not apply to plaintiffs' debt collection activities.

B. *Unlawful Debt Collection Practices Act*

In Count 3 of plaintiffs' first claim for relief, plaintiffs sought a declaration that their litigation activities are not subject to the UDCPA—ORS 646.639.[10] ORS 646.639 provides, as relevant:

"(2) It shall be an unlawful collection practice for a debt collector, while collecting or attempting to collect a debt to do any of the following:

---

[10] ORS 646.607(6) of the UTPA incorporates the UDCPA into the UTPA; it states:

"A person engages in an unlawful trade practice if in the course of the person's business, vocation or occupation the person:

"(6) Employs a collection practice that is unlawful under ORS 646.639[.]"

"(k)   Attempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten to take any action which the debt collector in the regular course of business does not take.

"*****

"(m)   Represent that an existing debt may be increased by the addition of attorney fees, investigation fees or any other fees or charges when such fees or charges may not legally be added to the existing debt.

"(n)   Collect or attempt to collect any interest or any other charges or fees in excess of the actual debt unless they are expressly authorized by the agreement creating the debt or expressly allowed by law."

The trial court agreed with plaintiffs and concluded that "Oregon case law establishes that the UDCPA does not apply to [plaintiffs'] litigation activities, but rather only to non-litigation collection efforts."

On appeal, defendants contend that plaintiffs' alleged conduct—the manner in which they seek to add fees and interests onto the underlying debt by "filing lawsuits that will likely go to default judgment without providing any proof that they are entitled to the additional fees and interest"—violates three separate provisions of the UDCPA: ORS 646.639(2)(k), ORS 646.639(2)(m), and ORS 646.639(2)(n). Defendants argue that the text of each of those provisions unambiguously provide that plaintiffs' alleged conduct may give rise to liability under the UDCPA, and that the existing Oregon case law on which the trial court relied is distinguishable.

Plaintiffs respond that their "legal representation of clients in debt-collection litigation is not covered by [paragraphs] (2)(k), (2)(m), (2)(n), or any other provision of the UDCPA *** and, consequently, DOJ may not use the UDCPA as a device to dictate the manner in which the Gordon firm practices law and represents its clients in debt-collection litigation." Plaintiffs argue that Oregon case law holds that debt-collection litigation is not an unlawful debt-collection practice under the UDCPA.

As a threshold matter, the parties do not dispute that plaintiffs are a "debt collector" as defined by the UDCPA, and we agree.[11] Thus, an attorney may be liable under the UDCPA. The only issue we are asked to address here is whether an attorney's debt collection *litigation* is subject to the pertinent provisions of the UDCPA.

We turn to the three separate provisions of the UDCPA at issue.

1. *ORS 646.639(2)(k) does not apply to plaintiffs' debt collection litigation.*

ORS 646.639(2)(k) states:

"(2) It shall be an unlawful collection practice for a debt collector, while collecting or attempting to collect a debt to do any of the following:

"* * * * *

"(k) Attempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten to take any action which the debt collector in the regular course of business does not take."

The trial court held that ORS 646.639(2)(k) did not apply to plaintiffs because *Porter v. Hill*, 314 Or 86, 838 P2d 45 (1992), and subsequent Oregon cases establish that the UDCPA does not apply to litigation activities, but rather only to nonlitigation collection efforts. *See id.* at 95 (holding that "filing a civil action to collect an alleged debt is not an act attempting to enforce a 'right' or 'remedy' proscribed by ORS 646.639(2)(k) merely because all or part of the alleged debt does not exist").

On appeal, defendants contend that the trial court erred when it concluded that plaintiffs' alleged debt collection practices did not or could not violate ORS 646.639(2)(k) because the plain text of the statute "unambiguously

---

[11] ORS 646.639(1)(g) provides the definition of a "debt collector":

"'Debt collector' means any person who by any direct or indirect action, conduct or practice, enforces or attempts to enforce an obligation that is owed or due to any commercial creditor, or alleged to be owed or due to any commercial creditor, by a consumer as a result of a consumer transaction."

establishes that plaintiffs' alleged debt collection practices violate that provision." Defendants concede that existing case law recognizes that the mere filing of a complaint or counterclaim for an allegedly nonexistent debt does not trigger UDCPA liability. However, defendants contend that, "in contrast to *Porter*, defendants do not allege that plaintiffs violated the UDCPA by 'actually filing a legal action.' To the contrary, defendants allege that plaintiffs violated the UDCPA by engaging in a course of conduct * * * in which plaintiffs would obtain default judgments from * * * debtors and could ultimately secure payment for attorney fees, interest, or other charges that plaintiffs did not prove or demonstrate they had a 'right' to receive."

Plaintiffs renew their argument on appeal relying on *Porter* and its progeny. We agree with plaintiffs and conclude that *Porter* establishes that ORS 646.639(2)(k) does not apply to plaintiffs' litigation activities.

In *Porter*, a lawyer sued a former client on his own behalf to collect fees, and the client counterclaimed, contending that the lawyer's lawsuit violated ORS 646.639 (2)(k) because it sought to collect a debt and late fees that were not actually owed. *Porter*, 314 Or at 88. In that case, the defendant client argued that "a debt that does not exist is a 'right * * * [that] does not exist.'" *Id.* at 90. The defendant client also argued that "by filing the action, [plaintiff lawyer] attempted to enforce a remedy (collecting a debt in a legal action) with knowledge or reason to know that that remedy does not exist in the absence of a debt." *Id.* The plaintiff lawyer countered that "a debt is not a 'right' within the meaning of ORS 646.639(2)(k)" and asserted that "that paragraph does not address the existence or amount of debt, but rather addresses only the method by which a debt is collected." *Id.* The Supreme Court agreed with the plaintiff lawyer's argument and held that "filing a civil action to collect an alleged debt is not an act attempting to enforce a 'right' or 'remedy' proscribed by ORS 646.639(2)(k) merely because all or part of the debt does not exist." *Id.* at 95. The court reasoned that "[n]othing in the statute evidences a legislative concern with the existence or amount of the underlying debt *as distinct from the use of abusive methods to pressure debtors to pay their debts.*" *Id.* at 92 (emphasis added). Therefore ORS

646.639(2)(k) "prohibit[s] certain methods of collecting debt, such as enforcing a right to collateral to the debt in order to pressure the debtor to pay the debt," but does not prohibit a lawyer from filing a civil action to collect an alleged debt. *Id.*; *see also Steele v. A & B Automotive & Towing Services, Inc.*, 135 Or App 632, 641, 899 P2d 1206 (1995) ("Regardless of the existence or validity of the debt alleged, defendant did nothing 'duplicitous or coercive' in responding to plaintiff's request for an invoice for the disputed services, or in filing a legal action to determine whether plaintiff is, in fact, liable for the disputed debt.").

Defendants allege broadly that plaintiffs violated the UDCPA through abusive methods by "obtain[ing] default judgments from * * * debtors and could ultimately secure payment for attorney fees, interest, or other charges that plaintiffs did not prove or demonstrate they had a 'right' to receive." Defendants clarify in reply that "plaintiffs likely violated the UDCPA by repeatedly filing complaints without adequate evidentiary support to show the entitlement to attorney fees and interest, by making false or misleading representations that a contract gives rise to an award of attorney fees or interest, and by failing to disclose that they do not have the contract at the time of filing the complaint."

We reject defendants' argument that a lack of evidentiary support to show entitlement to fees or the failure to disclose the correct contract at the time of filing the complaint is equivalent to not having a "right" or "remedy" to the alleged debt under ORS 646.639(2)(k). Even if plaintiffs did not show adequate evidentiary support to demonstrate their client's entitlement to the alleged debt or failed to attach the contract to the complaint at the time of filing that does not mean that the "right" or "remedy" no longer exists.

Defendants allege that plaintiffs engaged in abusive methods that are barred under *Porter*. However, alleging incorrect facts in a complaint or failing to include proper evidentiary support when filing an action are not abusive methods under ORS 646.639(2)(k). *But see Isom v. P.G.E.*, 67 Or App 97, 106, 677 P2d 59, *rev den*, 297 Or 272 (1984) (ORS 646.639(2)(k) applied when debt collector, a utility, had terminated the debtors' electrical service "when it had reason

to believe that the right to terminate was not available"); *Rowe v. Bank of the Cascades*, 68 Or App 490, 494-95, 683 P2d 93 (1984) (ORS 646.639(2)(k) applied where the debt collector, a bank, had frozen the debtors' checking account for the purpose of attempting to collect the debtors' debt to a different bank). Because plaintiffs did not engage in the type of abusive methods that are barred under the UDCPA, and instead, filed civil actions against debtors, plaintiffs did not violate the UDCPA.

Under *Porter*, the filing of a civil action against debtors does not violate the UDCPA. Therefore, the trial court did not err in declaring that ORS 646.639(2)(k) did not apply to plaintiffs' debt collection litigation.

2. *ORS 646.639(2)(n) does not apply to plaintiffs' debt collection litigation.*

ORS 646.639(2)(n) provides:

"(2) It shall be an unlawful collection practice for a debt collector, while collecting or attempting to collect a debt to do any of the following:

"* * * * *

"(n) Collect or attempt to collect any interest or any other charges or fees in excess of the actual debt unless they are expressly authorized by the agreement creating the debt or expressly allowed by law."

The trial court concluded that ORS 646.639(2)(n) did not apply to plaintiffs' alleged debt collection litigation. The trial court reasoned that "the Oregon Court of Appeals extended application of the *Porter* decision [in *Hedrick v. Spear*, 138 Or App 53, 60-61, 907 P2d 1123(1995)] to ORS 646.639(2)(n), which punishes collecting or attempting to collect fees and interest in excess of the debt owed unless specifically authorized by the agreement creating the debt."

On appeal, defendants contend that *Hedrick* is distinguishable from this case. Again, defendants contend that "the particular *methods* plaintiffs allegedly employ to collect or attempt to collect unauthorized attorney fees, interest, or other charges violates ORS 646.639(2)(n)." (Emphasis in original.) Plaintiffs renew their arguments on appeal, arguing that *Hedrick* is instructive, and we agree.

In *Hedrick*, the plaintiff attorney brought an action against the defendant, his former client, to collect fees for legal services. 138 Or App at 55. The plaintiff and the defendant did not have a written agreement, but the bottom of each bill from the plaintiff contained a late payment charge. *Id.* The defendant client filed a counterclaim against the plaintiff attorney for violation of the UDCPA, specifically, ORS 646.639(2)(n), arguing that the late payment charge was an unlawful charge. *Id.* at 59. We concluded that the analysis in *Porter* applied "with equal force to this claim" and held that "the filing of a legal action seeking to recover allegedly unauthorized charges is not 'the collection or attempt to collect' prohibited by ORS 646.639(2)(n)." *Hedrick*, 138 Or App at 61.

*Hedrick* extended the rationale in *Porter* to ORS 646.639(2)(n), and we adhere to that precedent here. Filing a legal action to recover alleged or disputed interest and fees is not prohibited by ORS 646.639(2)(n). Therefore, the trial court did not err in declaring that ORS 646.639(2)(n) did not apply to plaintiffs' debt collection litigation.

3. *ORS 646.639(2)(m) does not apply to plaintiffs' debt collection litigation.*

ORS 646.639(2)(m) provides:

"(2)   It shall be an unlawful collection practice for a debt collector, while collecting or attempting to collect a debt to do any of the following:

"* * * * *

"(m)   Represent that an existing debt may be increased by the addition of attorney fees, investigation fees or any other fees or charges when such fees or charges may not legally be added to the existing debt."

Although the trial court did not specifically explain why ORS 646.639(2)(m) did not apply to plaintiffs, the trial court entered judgment in plaintiffs' favor, concluding that plaintiffs' debt collection litigation on behalf of their clients is not subject to the UDCPA generally—including all of the provisions in ORS 646.639. Defendants argued in its briefing to the trial court and do so again on appeal that plaintiffs violated this provision. On appeal, defendants argue that

"plaintiffs' alleged debt collection practices violate the plain and unambiguous text of that provision; plaintiffs repeatedly represented an entitlement to collect (and did collect) attorney fees, interest, or other charges when they allegedly did not prove or demonstrate the legal right to collect those moneys." Defendants also contend that *Porter* and *Pro Car Care, Inc. v. Johnson*, 201 Or App 250, 258, 118 P3d 815 (2005), do not hold otherwise.

In *Pro Car Care*, the plaintiff, an automotive repair shop, brought an action against the defendant, a customer, after she stopped payment on a check to the plaintiff for completed work; the plaintiff's attorney had sent a letter demanding payment, fees, and damages to the defendant. 201 Or App at 252. The defendant counterclaimed, alleging that the plaintiff had violated the UDCPA, specifically, ORS 646.639(2)(k), (2)(m), and (2)(n). *Id.* The court held that "[t]he demand letter amounted to a threat to file a civil action"; thus, under *Porter* and *Hedrick* the plaintiff did not violate ORS 646.639(2)(k) and (2)(n). *Id.* at 258. The court did not reach the issue involving ORS 646.639(2)(m) because another statute allowed the plaintiff to include the fees. *Id.* at 258-59.

Defendants argue that, because *Pro Car Care* declined to resolve whether the rationale from *Porter* would extend to claims under ORS 646.639(2)(m), we "should not extend the rationale in *Porter* to exempt plaintiffs from ORS 646.639(2)(m) given that plaintiffs' alleged debt collection practices, if proven, fall squarely within the prohibition * * * and also constitute abusive debt collection practices that the UDCPA was designed to remedy." Plaintiffs respond that "there is no reason that the logic articulated in *Porter* and later applied in *Steele* and *Hedrick* would not apply equally to paragraph (2)(m)." We agree with plaintiffs because we are persuaded that filing a civil action to collect alleged attorney fees on an alleged existing debt is not an abusive debt collection practice under the reasoning discussed in that case law. Accordingly, we also apply that reasoning to ORS 646.639(2)(m) and conclude that plaintiffs' debt collection litigation is not prohibited by that statutory subsection.

In sum, the trial court did not err in declaring that ORS 646.639(2)(m) did not apply to plaintiffs' debt collection litigation.

## C. *Permanent Injunction*

As part of the general judgment, the trial court permanently enjoined defendants from bringing future enforcement actions under the UTPA against plaintiffs relating to litigation activities taken on behalf of their clients against third parties. For the reasons discussed above, because the UTPA can apply to plaintiffs' challenged conduct, we reverse the trial court's grant of the permanent injunction.

## III. CONCLUSION

In sum, the trial court erred in granting summary judgment on plaintiffs' UTPA claim. On remand, the trial court is instructed to enter judgment declaring that ORS 646.607(1) and ORS 646.608(1)(b) of the UTPA can apply to plaintiffs' debt collection litigation taken on behalf of their clients against third parties. Consequently, the trial court also erred in entering a permanent injunction in favor of plaintiffs enjoining defendants from bringing future enforcement actions under the UTPA against plaintiffs. Thus the permanent injunction is reversed. The trial court did not err in concluding that the UDCPA did not apply to plaintiffs' debt collection litigation.

Declaratory judgment reversed in part and remanded with instructions to enter judgment declaring the rights of the parties in accordance with this opinion; permanent injunction reversed; otherwise affirmed.